## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| EFFIE JOHNSON NORMAN, TREVOR CREECH, DEZ JONES, and EDWIN MCFARLAND, individually and on behalf of all others similarly situated, | Case No.: 2:22-cv-11393-TGB-CI |
| Plaintiffs, | Hon. Terrence G. Berg |
| v. | Magistrate Judge Curtis Ivy, Jr. |
| FCA US, LLC, | |
| Defendant. | |

## <u>FIRST AMENDED CLASS ACTION COMPLAINT</u>
## <u>AND DEMAND FOR JURY TRIAL</u>

Plaintiffs Effie Johnson Norman, Trevor Creech, Dez Jones, and Edwin McFarland ("Plaintiffs") bring this action against Defendant FCA US, LLC ("Defendant" or "FCA"), by and through their attorneys, individually and on behalf of all others similarly situated (the "Class," as more fully defined below), upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief and based upon investigation, alleging as follows:

## <u>INTRODUCTION</u>

1.      This is a class action lawsuit brought by Plaintiffs individually and on behalf of all others similarly situated who purchased or leased a Ram 1500 vehicle

(the "Class Vehicles")[1] sold with a defect that allows water to enter the cabin, causing foul odors, mold/mildew, electrical system disruption, and rear cabin airbag contamination (the "Water Intrusion Defect," as defined below). This action arises from FCA's failure, despite its longstanding knowledge of a material design and/or manufacturing defect, to disclose the Water Intrusion Defect to Plaintiff and other consumers.

2.     The Class Vehicles are equipped with a rear cabin window, roofline third brake light, and roof-mounted auxiliary antenna.



---

[1] The Class Vehicles include all model year 2016-2022 RAM 1500 vehicles. Plaintiff reserves the right to amend or add to the vehicle models and model years included in the definition of Class Vehicles.

3.     All three must be adequately sealed to withstand environmental conditions and prevent water and moisture from leaking past the weatherstripping. Moreover, the body, frame, and chassis of the trucks must be adequately designed and manufactured to prevent excessive twisting/flex, which could crack the rear cabin windows or disturb the sealing capabilities of the rear cabin window, rear cabin brake light, and/or the auxiliary antenna.

4.     However, the Water Intrusion Defect in the Class Vehicles results in water intrusion in the rear cabin, which destroys the interior of the vehicles (leaving permanent stain marks); leaves foul odors, mold, and mildew; causes electrical connections to short-circuit, resulting in electrical issues with the vehicle's Body Control Module ("BCM") or other electrical systems; and contaminates and fouls the rear-cabin airbag and propellant.

5.     Not only does the Water Intrusion Defect destroy the interior cosmetics of the Class Vehicles, but the Water Intrusion Defect presents a serious risk to occupants' safety and health. First, the Water Intrusion Defect causes a foul odor, mold, and mildew, which can cause health issues for the vehicles' occupants.[2] Second, the Water Intrusion Defect can short the vehicles' BCM or other electronic systems connection(s), such as the push-to-start ignition system, locks, windows, headlights, taillights, interior lights, windshield wipers, climate control,

---

[2] https://www.cdc.gov/mold/faqs.htm (attached as Exhibit A).

infotainment system and navigation, and back up camera. Failure of one or all these systems not only distracts the driver, but could also cause, among other things, vehicle start-up failure, headlight and taillight failure (a violation of traffic ordinances and National Highway Traffic Safety Administration ("NHTSA") regulations), inoperable turn signals or brake lights (same), inoperable backup camera or infotainment system, inoperable windshield wipers, and the inability to lock (or unlock) the vehicle. Third, the water intrusion contacts and interferes with the rear-cabin airbag and its propellant, contaminating and fouling the propellant, creating the same condition present in the recalled Takata airbags.

6.     Vehicles must be designed and manufactured to withstand environmental exposure around and throughout the vehicle to prevent water intrusion and related corrosion or damage.

7.     All Class Vehicles are equipped with the same or substantially similar rear cabin windows, rear cabin brake lights, and auxiliary antenna.

8.     FCA has known about the Water Intrusion Defect and the risks that it poses since at least 2016, based on the increase in Water Intrusion Defect complaints that Class members submitted to NHTSA, and the correlating increase in warranty claims to FCA, as well as its pre-sale testing, release of three Technical Service Bulletins ("TSB"), and other sources. Nevertheless, FCA has never disclosed the Water Intrusion Defect; rather, it actively conceals it.

9.     Many owners and lessees of Class Vehicles have requested goodwill repair of the Water Intrusion Defect from FCA and its authorized dealerships, but FCA often refuses to do so. In fact, Plaintiff Norman contacted FCA regarding damage caused to her vehicle by the Water Intrusion Defect, but FCA refused her free repairs. Plaintiff Norman ultimately paid for the repairs out-of-pocket.

10.     FCA has taken no action to correct the root cause of the Water Intrusion Defect, despite whether its symptoms appear during or outside of the limited warranty. Because the Water Intrusion Defect symptoms typically appear during and shortly outside of the limited warranty—and given FCA's knowledge of this concealed, safety-related design and/or manufacturing defect—FCA's attempt to limit the applicable warranties with respect to the Water Intrusion Defect is unconscionable and fails its essential purpose. Moreover, if/when FCA repairs vehicles presented for the Water Intrusion Defect repair, it removes and replaces defective parts with new, but equally defective, parts.

11.     Despite notice and knowledge of the Water Intrusion Defect from the numerous consumer complaints that it received, warranty claims and customer complaints submitted by dealers, pre-sale durability testing, NHTSA complaints, and its own internal records, FCA has not recalled the Class Vehicles to repair the Water Intrusion Defect, nor has FCA extended the warranty of Class Vehicles, offered its customers a suitable repair or replacement free of charge, reimbursed

consumers who incurred out-of-pocket expenses to repair the Water Intrusion Defect, or compensated consumers for the diminished value caused by the Water Intrusion Defect.

12.    As a result of FCA's unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value.

13.    Had Plaintiffs and other Class members known about the Water Intrusion Defect at the time of purchase or lease, they would not have purchased or leased the Class Vehicles or would have paid substantially less for them.

14.    As a result of the Water Intrusion Defect and the monetary costs associated with attempting to repair it, Plaintiffs and other Class members have suffered injury in fact, incurred damages, and have been otherwise harmed by FCA's conduct.

15.    Accordingly, Plaintiffs bring this action, individually and on behalf of the other Class members, to redress FCA's common law violations; violations of the Magnuson-Moss Warranty Act; and violations of various states' consumer fraud and warranty statutes.

## JURISDICTION AND VENUE

16.    This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000 and Plaintiffs are a citizen of different states than FCA.

17.    This Court has personal jurisdiction over Plaintiffs because they submit to the Court's personal jurisdiction. This Court has personal jurisdiction over FCA because FCA conducted and continues to conduct substantial business in this District; its corporate headquarters is located in this District; and because it has committed the acts and omissions complained of herein in this District, including marketing, selling, and leasing Class Vehicles in this District.

18.    Venue as to FCA is proper in this judicial district under 28 U.S.C § 1391 because Defendant sells a substantial number of automobiles in this District, has dealerships in this District, maintains its corporate headquarters within this District, and many of FCA's acts complained of herein occurred within this District, including the marketing and leasing of the Class Vehicles to Plaintiffs and other Class members in this District.

## PARTIES

### *Alabama Plaintiff*

19.    Plaintiff Norman is a citizen of Alabama, residing in Montgomery, Alabama.

20.    On or around April 1, 2020, Plaintiff Norman purchased a used 2019 Ram 1500 with an odometer reading of approximately 31,000 miles from Wholesale Auto Plus LLC in Montgomery, Alabama. Plaintiff Norman's vehicle was still covered by the Limited Warranty at time of purchase.

21.    Plaintiff Norman purchased (and still owns) this vehicle and uses it for personal, family, and/or household purposes.

22.    Plaintiff Norman first noticed intermittent electrical issues, such as key fob recognition failure and infotainment system failure, in December 2020 at an odometer reading of approximately 45,000 miles. Due to the intermittent nature of the electrical failures, Plaintiff Norman did not immediately present her vehicle for repair. The electrical failures progressively worsened, and in December 2021, at approximately 53,000 miles, Plaintiff Norman first noticed a foul odor but did not find any moisture and thought it was an intermittent and isolated incident. In early 2022, Plaintiff Norman noticed her backseat carpet was fully saturated with water and moldy. Plaintiff Norman presented her vehicle to Stivers Ram in Montgomery, Alabama, which performed a moisture test and confirmed the rear cabin window was cracked. The crack was consistent with language that Ram offered in a Technical Service Bulletin ("TSB") specific to that model's rear window. Despite the existence of the TSB, Stivers and FCA denied her covered repair. On June 10, 2022, Plaintiff Norman had the rear window replaced at her own expense. To this

day, Plaintiff Norman still has unremedied electrical issues and her vehicle will not start with the ignition button.



*Rear facing, interior image of Plaintiff's rear cabin leaking water.*

23.     Prior to purchasing her vehicle, Plaintiff Norman was exposed to and reviewed FCA's promotional materials, including TV advertisements and FCA's website. However, FCA did not disclose the Water Intrusion Defect through any of these avenues.

24.     Neither FCA, nor any of its agents, dealers, or other representatives informed Plaintiff Norman of the existence of the Water Intrusion Defect prior to her purchase of the vehicle or when she took the vehicle in for repair.

25.     Plaintiff Norman has suffered an ascertainable loss resulting from FCA's omissions associated with the Water Intrusion Defect including, but not limited to, loss of the benefit of her bargain.

26.     Had FCA disclosed the Water Intrusion Defect, Plaintiff Norman would not have purchased her Class Vehicle or would have paid less for it.

*California Plaintiff*

27.     Trevor Creech is a citizen of Arizona, residing in Sierra Vista, Arizona.

28.     On or around December 6, 2018, Plaintiff Creech purchased a new 2019 Ram 1500 from Moss Bros. Auto Group in Riverside, California. The vehicle was covered by the Limited Warranty at time of purchase.

29.     Plaintiff Creech purchased (and still owns) this vehicle and uses it for personal, family, and/or household purposes.

30.     Plaintiff Creech first noticed two cracks in the rear windshield of his vehicle in November 2020, when his vehicle's odometer read less than 20,000 miles. Because he typically parked his vehicle outside, he noticed significant water leakage and a foul odor during the rainy season. Plaintiff Creech presented his vehicle to Lawley Chrysler Jeep Dodge in Sierra Vista, Arizona. The dealership replaced the vehicle's rear brake lights and the seam that appeared to be causing the cracks. However, the cracks in the rear windshield returned within six months of these repairs.

31.     Plaintiff Creech has suffered an ascertainable loss resulting from FCA's omissions associated with the Water Intrusion Defect including, but not limited to, loss of the benefit of his bargain.

32.     Had FCA disclosed the Water Intrusion Defect, Plaintiff Creech would not have purchased her Class Vehicle or would have paid less for it.

***Georgia Plaintiff***

33.     Plaintiff Jones is a citizen of Alabama, residing in Phenix City, Alabama.

34.     On or around June 19, 2018, Plaintiff Jones purchased a used 2016 Ram 1500 with an odometer reading of approximately 30,000 miles from Carmax in Columbus, Georgia. Plaintiff Jones's vehicle was still covered by the Limited Warranty at time of purchase.

35.     Plaintiff Jones purchased (and still owns) this vehicle and uses it for personal, family, and/or household purposes.

36.     Plaintiff Jones first noticed leakage and mold around the gasket and seal of his vehicle's third brake light in or around July 2018, when the vehicle's odometer read approximately 30,500 to 31,000 miles. He presented the vehicle to AutoNation of South Columbus in Columbus, Georgia, which diagnosed the Water Intrusion Defect and replaced the brake light and seal. When the problem returned several months later, Plaintiff Jones brought his vehicle to AutoNation of North Columbus

in Columbus, Georgia, which made the same diagnosis but did not perform any repairs. Plaintiff Jones has experienced significant problems with his vehicle as a result of the Water Intrusion Defect. First, the interior of his vehicle becomes wet after every rain. Second, the water intrusion causes mold, mildew, and foul odors. Third, the Water Intrusion Defect has hindered the functionality of the vehicle's power folding side mirrors and power slide window. Plaintiff Jones has resorted to parking his vehicle on a slope to mitigate the damage done by the Water Intrusion Defect when rainy weather occurs.

37.    Plaintiff Jones has suffered an ascertainable loss resulting from FCA's omissions associated with the Water Intrusion Defect including, but not limited to, loss of the benefit of his bargain.

38.    Had FCA disclosed the Water Intrusion Defect, Plaintiff Jones would not have purchased her Class Vehicle or would have paid less for it.

***Texas Plaintiff***

39.    Plaintiff McFarland is a citizen of Texas, residing in Greenville, Texas.

40.    In or around May 2018, Plaintiff McFarland purchased a new 2018 Dodge Ram 1500 from Greenville Chrysler Dodge Jeep Ram in Greenville, Texas. Plaintiff McFarland's vehicle was covered by the Limited Warranty at the time of purchase. Plaintiff McFarland also purchased an extended warranty.

41.    Plaintiff McFarland purchased his vehicle and used it for personal, family, and/or household purposes.

42.    Plaintiff McFarland first noticed the water defect in December 2018 when his child continued to get wet while in the rear seat of the cab when it rained. In December 2018, when his odometer read less than 10,000 miles, Plaintiff McFarland presented his vehicle to the Greenville Chrysler Dodge Jeep Ram dealership due to the leak causing the cab to be soaked with water. The dealership explained that there was a leak coming from the third light on the rear windshield of Plaintiff McFarland's vehicle. The dealership resealed the rear third brake light and told Plaintiff McFarland that the water had been cleaned up in the cab.

43.    In or around May 2020, when Plaintiff McFarland's vehicle had approximately 49,000 miles on the odometer, he presented his vehicle to the Greenville Chrysler Dodge Jeep Ram dealership due to the vehicle's infotainment malfunctioning, which resulted in the air conditioner turning itself on and off, as well the vehicle making phone calls on its own. The dealership explained that the protective shield on the infotainment system, which controlled the air conditioner and the phone, was separating from the infotainment system due to the heat in Texas, causing it to malfunction. Plaintiff McFarland's vehicle remained at the dealership for a month and a half. The dealership explained that COVID-19 caused the delay in receiving the parts to repair the infotainment system. When Plaintiff McFarland

13

went to the dealership to pick up his vehicle in or around June 2020, the cab of his vehicle was covered in mold as a result of the leak in the third brake light. The dealership explained that there was nothing that it could do to fix the problem and Plaintiff McFarland would need seek a remedy through his insurance. The insurance company inspected the vehicle at the dealership, concluding that the vehicle was totaled. The insurance company explained that the mold covering the cab was too extensive to repair and was a health concern. Plaintiff McFarland never took his vehicle off the lot after discovering the mold, and he was forced to purchase a new vehicle.

44.    Plaintiff McFarland has suffered an ascertainable loss resulting from FCA's omissions associated with the Water Intrusion Defect including, but not limited to, loss of the benefit of his bargain.

45.    Had FCA disclosed the Water Intrusion Defect, Plaintiff McFarland would not have purchased his Class Vehicle or would have paid less for it.

***Defendant***

46.    Defendant FCA is a Michigan limited liability company, with its principal office located in Auburn Hills, Michigan. FCA designs, tests, manufactures, distributes, warrants, sells, and leases various vehicles, including the Class Vehicles, under several prominent brand names, including Chrysler, Jeep, and

14

Dodge in this District and throughout the United States. FCA manufactured the Class Vehicles at issue in this case.

## FACTUAL ALLEGATIONS

47.   FCA designs, manufactures, markets, and sells millions of vehicles worldwide under various brand names, such as Dodge, Jeep, Chrysler, RAM, Fiat, and Maserati. FCA reported $101.32 billion of revenue in 2020 alone.

48.   FCA designed, manufactured, marketed, and sold more than one million Class Vehicles nationwide, all of which are equipped with the same or substantially similar structural designs and rear cabin windows, rear third brake lights, and auxiliary antennas.

**A.     The Water Intrusion Defect and Inadequate Repair**

49.   The Class Vehicles are equipped with rear cabin windows, rear cabin brake lights, and auxiliary antennas. These components are affixed to the exterior body, requiring environmental sealing.

50.   However, FCA failed to adequately design and/or manufacture the Class Vehicles' rear cabin windows, rear cabin brake lights, and auxiliary antennas and related seals.

51.   FCA also failed to design and/or manufacture the Class Vehicles with sufficiently robust and durable structural designs so that the bodies, frames, or

15

chassis do not twist or flex. If such twisting or flexing occurs, plastic or glass vehicle components can crack or break.

52.    On February 15, 2021, FCA issued a TSB admitting that "[w]ater is leaking into cab through the third brake light."[3] FCA instructed technicians to add a secondary gasket (seal) at the top of the brake light.



53.    However, the TSB further stated that it "does not authorize warranty repairs."

---

[3] *See* Exhibit B.

54.     On April 15, 2021, FCA issued another TSB for "Water Leak Rear Of Cab Rear Seat Or Headliner."[4]

55.     This TSB identifies four potential Water Intrusion Defect causes: (1) cracked rear window/frame, (2) incorrect back window seal, (3) the rear brake light, or (4) the antenna.



---

[4] Exhibit C.



56.    Free repairs pursuant to this TSB are only available if the vehicle is still within the warranty period.

57.    On April 22, 2021, FCA issued another TSB for "[w]ater leaks from the cab back, evident on rear seats, carpet, and potentially roof."[5] FCA instructed the technicians to "[i]nspect the rear sliding glass assembly from inside the cab, [to] look[] for cracks in the frame."

---

[5] Exhibit D.



58.     If such cracking was present, FCA instructed technicians to "[r]eplace the rear sliding glass assembly."

59.     Like its other TSBs, this repair is only "[r]eimbursable within the provisions of the warranty."

60.     But these repairs were inadequate, as FCA still failed to address the underlying design and/or manufacturing defect(s) causing the Water Intrusion Defect. Rather than correcting the cause, FCA is treating the symptoms. FCA instructs technicians to replace one part with an equally defective part. Upon information and belief, FCA has not redesigned the defective parts.

61.     Class members continue to complain about the Water Intrusion Defect after repair. For example, on April 11, 2022, the owner of a 2019 Ram 1500 filed the following complaint with NHTSA:

The rear window frame has cracked due to chasie flex. It's been repaired one time already.[6]

62.    On February 11, 2022, the owner of a 2017 Ram 1500 filed the following complaint with NHTSA:

2017 Ram Quad cab truck leaking water into cabin ? 3 rd rear brake light gasket replaced and still finding water on front windshield and dash and also under back fold up seat storage compartments filled with water ??? There are numerous complaints re: Ram trucks of different years experiencing same problems why is this not a issue for a recall when this will rot out floor n cause mold on interior carpets and headliners ? My truck has 12,169 miles on it and I feel like it is worthless !!! I didn't buy a fish tank I purchased a very expensive truck that Ram knows has this problem many many times ?[7]

63.    On January 5, 2022, the owner of a 2021 Ram 1500 posted the following complaint on NHTSA:

The contact owns a 2021 Ram 1500. The contact stated that upon taking the vehicle to the car wash, he noticed that the headliner had turned blue. The contact stated that the inside of the rear end of the vehicle was corroded. The vehicle was taken to the dealer who diagnosed that water was leaking through the rear taillight on top of the cab into the headliner and rear end of the vehicle. The dealer installed silicon in the gap between the rear subframe and the rear taillight; however, the failure had been recurring. The manufacturer was notified of the failure but provided no assistance. The vehicle was not repaired. The failure mileage was approximately was 3,000.[8]

---

[6] NHTSA ID 11460375 (all typographical and syntactical errors are taken directly from the NHTSA complaints).

[7] NHTSA ID 11451569.

[8] NHTSA ID 11446345.

64.    On February 21, 2021, the owner of a 2019 Ram 1500 posted the

following complaint with NHTSA:

> WATER ENTERS   VEHICLE   THROUGH REAR   WINDOW.
> STRESS   CRACKS   FORM   IN   PLASTIC   FRAME   OF REAR
> WINDOW.   THESE   THEN   CRACK   AND WATER GETS   IN
> VEHICLE   CAN   CAUSES MOLD TO   GROW. RAM   REPLACED
> WINDOW   AND   THE   NEW   ONE   ALREADY   HAD   STRESS
> MARKS ON THEM. THIS IS AM ONGOING ISSUE THAT NEEDS
> TO BE TAKEN CARE OF.[9]

65.    On January 7, 2021, the owner of a 2020 Ram 1500 filed the following

complaint with NHTSA:

> THE   REAR   FRAME   AROUND   THE   REAR   CAB   WINDOW
> CRACKED AND IS LEAKING WATER. THIS IS ON A RAM 1500
> THAT IS LESS THAN A YEAR OLD WITH ONLY 5,500 MILES
> ON IT. THERE HAS NOT BEEN ANY UNUSUAL USE OR
> DAMAGE THAT WOULD HAVE CAUSED THIS TO HAPPEN.
> MANY OTHER OWNERS ARE HAVING PROBLEMS WITH THIS
> EXACT SAME CRACK AND WATER LEAK. REPLACEMENT
> WINDOWS DON'T SEEM TO FIX THE ISSUE AND CRACK
> AGAIN.[10]

66.    On December 31, 2020, the owner of a 2019 Ram 1500 filed the

following complaint with NHTSA:

> REAR   WINDOW PLASTIC   CRACKED/LEAKING   WHEN
> RAINING OR GOING THROUGH A CAR WASH. DEALER FIXED
> 3RD BRAKE   LIGHT AND   RESEALED ANTENNA BUT
> WINDOW   STILL   LEAKING   HEADLINER   AND   SEATS   GET

---

[9] NHTSA ID 11397215.

[10] NHTSA ID 11387007.

SOAKING WET I HAVE A VIDEO OF THIS HAPPENING BUT IT
WON'T LET ME UPLOAD IT[11]

67.     On May 5, 2020, the owner of a 2018 Ram 1500 filed the following

complaint with NHTSA:

WATER LEAKING INTO STORAGE AREA UNDER BACK SEAT
DEALERSHIP REPLACED BRAKE LIGHT ASSEMBLE AND
GASKET ON REAR CAB BUT WATER STILL PRESENT AFTER
RAINFALL OR CARWASH WHEN VEHICLE IS PARKED ALSO
NOTED SEAT BOLTS AND OTHER PARTS UNDER SEAR HAVE
RUST ON THEM. *TR[12]

68.     On March 10, 2020, the owner of a 2018 Ram 1500 filed the following

complaint:

TRUCK LEAKS SOMEWHERE. IT IS IN THE SHOP RIGHT NOW
FOR THE 3RD TIME FOR THE LEAK. GOT TOLD IT WAS FIXED
2 TIMES ALREADY AND IT STILL LEAKED. THE TRUCK HAS
HEATED BACK SEATS AND THAT'S WHERE THE TRUCK
HOLDS WATER, UNDERNEATH THE BACK SEAT STORAGE. I
WON'T USE THE HEATED BACK SEATS CAUSE MY CARPET
STAYS WET WHEN IT'S RAINING. THERE IS ALSO A
SUBWOOFER UNDER THE BACKSEAT WHERE IT
HOLDS WATER, IT'S GOTTEN REPLACED ONCE ALREADY
FROM THE WATER DAMAGE. AND IT HAS
GOTTEN WET AGAIN. THE CARPET GOT REPLACED ONCE,
THERE WAS MOLD, AND THE CARPET GOT WET AGAIN SO
THEY ARE GOING TO HAVE TO REPLACE IT AGAIN CAUSE
THERE IS MORE THAN LIKELY MOLD FROM IT
HOLDING WATER.[13]

---

[11] NHTSA ID 11385787.

[12] NHTSA ID 11323404

[13] NHTSA ID 11317423

69.     Additionally, newer model Class Vehicles complain about the Water Intrusion Defect.

70.     For example, the owner of a 2021 Ram 1500 filed the following complaint with NHTSA on January 5, 2022:

> The contact owns a 2021 Ram 1500. The contact stated that upon taking the vehicle to the car wash, he noticed that the headliner had turned blue. The contact stated that the inside of the rear end of the vehicle was corroded. The vehicle was taken to the dealer who diagnosed that water was leaking through the rear taillight on top of the cab into the headliner and rear end of the vehicle. The dealer installed silicon in the gap between the rear subframe and the rear taillight; however, the failure had been recurring. The manufacturer was notified of the failure but provided no assistance. The vehicle was not repaired. The failure mileage was approximately was 3,000.[14]

71.     On October 21, 2021, the owner of a 2021 Ram 1500 filed the following complaint with NHTSA:

> The contact owns a 2021 Ram 1500. The contact stated while entering the vehicle, he noticed water leaking into the interior of the rear lamp coming from the top of the vehicle. The local dealer was contacted and informed the contact that the vehicle could be repaired using silicone to fix the failure. The contact was concerned that the repair would not fix the failure. The vehicle was not diagnosed or repaired. The manufacturer was made aware of the failure. The failure mileage was approximately 3,000.[15]

72.     On May 28, 2022, the owner of a 2022 Ram 1500 filed the following complaint with NHTSA:

> Radio will randomly switch sources and volume and speakers. This is

---

[14] NHTSA ID 11446345.

[15] NHTSA ID 11437658.

very distracting and could cause an accident[16]

73.     Environmental sealing should function for periods (and mileages) substantially in excess of those specified in FCA's warranties and, given past experience, consumers legitimately expect to enjoy the use of an automobile without worrying about water intrusion.

74.     Automobiles must incorporate designs that are able to withstand foreseeable usage conditions such as environmental exposure and chassis flex and shock absorption. But here, the Class Vehicles are deficient in design and/or manufacture.

75.     The Class Vehicles were manufactured with insufficient and defective rear brake lights, antennas, and windows, whose defects arise from non-robust sealing, and/or cabin, body, or chassis twist. These defects render the Class Vehicles prone to the Water Intrusion Defect.

76.     Once sealing capabilities are compromised, the seals fail to function as intended and expected and can result in the Water Intrusion Defect.

**B.     The Water Intrusion Defect Is A Serious Safety Defect**

77.     Not only does the Water Intrusion Defect destroy Class Vehicle interiors (decreasing their resale value), but the Water Intrusion Defect also poses a risk to occupant safety and health.

---

[16] NHTSA ID 11466493.

78.     FCA markets the Class Vehicles as durable and reliable trucks. But because of the Water Intrusion Defect, the Class Vehicles are far from durable or reliable, are not fit for ordinary use, and are unsafe.

79.     The Water Intrusion Defect causes a foul odor, mold, and mildew, which can cause health issues for the vehicles' occupants, including respiratory issues such as mold-induced asthma and lung inflammation.

80.     The Water Intrusion Defect also disrupts the vehicles' BCM or other electrical connection(s), which control many of the vehicles' electronic systems such as the push-to-start ignition system, locks, windows, headlights, taillights, interior lights, windshield wipers, climate control, infotainment system and navigation, and back up camera, among other things.

81.     Failure of one or all these systems not only distracts the driver, but could also cause, among other things, vehicle start-up failure, headlight and taillight failure (a violation of traffic ordinances and NHTSA regulations), inoperable turn signals or brake lights (same), inoperable windshield wipers, and the inability to lock (or unlock) the vehicle, among other things.

82.     Third, water contacts and interferes with the rear-cabin airbag and its propellant, contaminating and fouling the propellant, creating the same condition present in recalled Takata airbags.

83.     Many consumers have posted complaints with NHTSA highlighting the

seriousness of the Water Intrusion Defect. For example, on May 26, 2022, the owner of a 2020 Ram 1500 filed the following complaint with NHTSA regarding airbag destruction:

> The antenna on the posterior roof began leaking, causing extensive damage to the headliner, including the fabric around the rear airbags. Unknown level of destruction to the airbags. It is available for inspection upon request-Photos are also available. The vehicle has not been inspected by other entities at this time. A recent thunderstorm occurred and the headliner was immediately identified to have been damaged/stained. The dealership was contacted to see if this would be covered as a manufacturing defect, however there were no open recalls and the cost was expected to be paid by the customer. Upon self assessment, the leak was identified to be coming from the antenna. No applicable warning lamps or messages to include.[17]

84.     On April 18, 2022, the owner of a 2019 Ram 1500 filed the following complaint with NHTSA:

> Water leaking into roof from unknown source. Creating musty smell (mold). Concerns are: 1. Mold risk to consumer health. 2. Airbags/sensors being affected by water infiltration. 3. Potential electrical hazards associated with water infiltration.[18]

85.     On April 18, 2022, the owner of a 2017 Ram 1500 filed the following complaint with NHTSA:

> 2017 RAM 1500. CONSUMER WRITES IN REGARD TO MOLD AND MILDEW IN VEHICLE. THE CONSUMER STATED THE VENTS LEAKED CAUSING A BUILD UP OF MOLD AND MILDEW. THE CARPET, FLOORBOARDS AND

---

[17] NHTSA ID 11466263.

[18] NHTSA ID 11461120.

PADDING WERE ALL WET AND NEEDED TO BE REPLACED.[19]

86.    On January 25, 2022, the owner of a 2020 Ram 1500 filed the following

complaint with NHTSA:

> Rear window crack-leaks water into the floor and damages the auto receiver. The vehicle will not start and keys are not operational. Insurance company will not cover and warranties will not cover damages. Insurance company believes is a design safety issue and needs to be looked into since there are ample of complaints on the internet[20]

87.    On October 31, 2021, the owner of a 2020 Ram 1500 filed the following

complaint with NHTSA:

> Potential "Black Mold" health exposure due to faulty construction/design/product allowing water to leak into the cab soaking and staining headliner, seats and rugs. The water is absorbed into the insulation and fabrics. Research has confirmed this issue has been reported for more than 15 years. 2020 Ram 1500 Bighorn Quadcab.[21]

88.    On August 11, 2021, the owner of a 2020 Ram 1500 filed the following

complaint with NHTSA:

> Rear windshield surround cracked. Water is entering vehicle. Concerned about excessive moisture in and around airbags.[22]

89.    On January 21, 2021, the owner of a 2019 Ram 1500 filed the following

complaint with NHTSA:

TOUCHSCREEN CONTROLS FOR RADIO, CLIMATE, AND ALL

---

[19] NHTSA ID 11461175.

[20] NHTSA ID 11448900.

[21] NHTSA ID 11438799.

[22] NHTSA ID 11428690.

OTHER CONTROLS DO NOT WORK PROPERLY. ANY AND ALL ELEMENTS OF TOUCHSCREEN WILL POWER ON AND OFF FROM AC TO HEAT TO RADIO STATIONS TO RANDOM PHONE DIALING. ALSO THE VEHICLE WILL SHUT DOWN WHILE DRIVING AS IF THE GEAR SHIFTER HAS BEEN PLACED IN NEUTRAL. TRUCK WILL NOT ACCELERATE AND REMOTE START DOESN'T WORK EITHER. LEFT REAR PASSENGER WINDOW SEAL NEAR BED OF TRUCK ALSO LEAKS WATER WHEN IT RAINS.[23]

90. On May 17, 2020, the owner of a 2019 Ram 1500 filed the following complaint with NHTSA:

WATER LEAKAGE INTO THE REAR OF THE CAB. MOLD STARTED GROWING IN THE CARPET. NOTICE IT IS MOR PREVELENT AT SEAM INDICATING ITS BOTTOM UP. ALSO, MOISTURE PRESENT INSIDE CAB WHEN NOT DRIVEN REGULARLY. MULTIPLE COMPLAINTS LOCATED ON YOUTUBE AS WELL. NOTICED REAR CAB LOOKS LIKE SEALS ARE NOT SEATED CORRECTLY.[24]

91. On February 28, 2019, the owner of a 2017 Ram 1500 filed the following complaint with NHTSA:

TL* THE CONTACT OWNS A 2017 RAM 1500. THE CONTACT STATED THAT REAR SEATS WERE DRENCHED WITH WATER, WHICH CAUSED A FOUL ODOR INSIDE THE VEHICLE. THE VEHICLE WAS TAKEN TO MULTIPLE UNKNOWN INDEPENDENT MECHANICS WHERE THE CONTACT WAS INFORMED THAT THE SEAL ON THE THIRD BRAKE LIGHT WAS FRACTURED AND NEEDED TO BE REPLACED. THE FAILURE CAUSED WATER TO ENTER THE VEHICLE. AFTER THE VEHICLE WAS REPAIRED, THE "REAR BRAKE LIGHT OUT" AND "KEY FOB LEFT THE VEHICLE" WARNING MESSAGES ILLUMINATED. THE

---

[23] NHTSA ID 11389260.

[24] NHTSA ID 11324911.

VEHICLE WAS TAKEN TO ANOTHER INDEPENDENT MECHANIC WHERE THE CONTACT WAS INFORMED THAT THE THIRD BRAKE LIGHT WAS INOPERABLE. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURES. THE FAILURE MILEAGE WAS 26,320.[25]

92.     These complaints represent a sampling of the many complaints filed with NHTSA.

93.     A vehicle suffering from the Water Intrusion Defect is unfit for its ordinary and intended purpose. This is particularly true for the Class Vehicles, which were marketed and sold as safe and reliable family vehicles.

94.     The Water Intrusion Defect substantially impairs the use, value, and safety of the Class Vehicles and renders them substantially less drivable, safe, useful, and valuable than they'd be without the defect.

C.     **FCA Has Long Known About the Water Intrusion Defect, But Failed to Disclose It**

95.     FCA knew or should have known about the Water Intrusion Defect and its related safety and health risks well before Plaintiff and the other Class members purchased or leased their Class Vehicles. Pre-release evaluation and testing data; consumer complaints made directly to FCA, NHTSA, and/or posted on public online vehicle owner forums; its own investigations; repair and replacement part sales data; and aggregate data from authorized-FCA dealerships.

---

[25] NHTSA ID 11183262.

96.    Pre-release design, engineering, manufacture, and testing of Class Vehicles provided FCA with comprehensive and exclusive knowledge about the Water Intrusion Defect, particularly the seals' functions, uses, and the expected conditions they may face, and frame/chassis twisting.

97.    FCA knew or should have known about the Water Intrusion Defect from testing performed on the seals and structure. Vehicle manufacturers, like FCA and its suppliers, perform various pre-production tests on new vehicle components including, but not limited to, Failure Modes and Effects Analyses ("FMEA")[26] and frame/cabin twisting tests.

98.    FMEA tests assess methods or modes by which a particular component might fail. It examines the materials used in each component, the assembly of the part, and whether use in various manners would cause the part to fail. For example, in testing the systems at issue here, FMEA testing would explore, among other things, how and under what conditions the seals could fail, how likely failure was under different conditions, and how likely each condition tested was to occur. If properly performed, FMEA testing here would have revealed that the Class Vehicles were susceptible to the Water Intrusion Defect.

99.    Frame/chassis twist tests asses the vehicles' flex and related

---

[26]    https://www.iatfglobaloversight.org/wp/wp-content/uploads/2020/08/FCA-US-LLC-CSR-IATF-16949-20200805-final.pdf (last visited June 16, 2022) (attached as Exhibit E).

forces/tensions caused by flex. For example, in testing the twist or flex here, the test would ask, among other things, what components may suffer from twist or flex, to what degree does twist or flex occur and how much damage is caused, and the condition(s) which would cause excessive twist or flex. If properly performed, such testing here would have revealed that the Class Vehicles were susceptible to the Water Intrusion Defect. FCA performs such tests.[27]

100.   FCA and its suppliers performed these tests, and others, on the Class Vehicles and, if performed with due care, each of these tests demonstrated that the relevant systems or components in the Class Vehicles would lead to failure.

101.   Moreover, FCA monitors customer complaints submitted to NHTSA. Thus, FCA knew or should have known about the Water Intrusion Defect and its associated risks through the numerous consumer complaints filed with NHTSA as early as 2016. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

102.   For example, on October 8, 2016, the owner of a 2016 Ram 1500 filed the following complaint with NHTSA:

> WHEN DRIVING AT NIGHT THE HEADLIGHTS FLICKER. DOES IT IN LOW BEAM AND HIGH BEAM. HAS DONE IT WITH AC ON AND OFF. HAS DONE THIS WITH HEAT ON AND OFF. I AM CONCERNED THAT WITH THE ISSUE THE HEADLIGHTS WILL GO COMPLETELY OUT WHILE DRIVING. THIS CAN CAUSE A LIFE AND DEATH ISSUE. IT DOES IT AT HIGHWAY SPEEDS AS WELL AS CITY SPEED. I NOTICED THIS WHEN THE VEHICLE

---

[27]    https://www.freep.com/story/money/cars/2018/11/02/chevy-ford-ram-truck-tests/1809135002/ (attached as Exhibit F).

HAD 751 MILES ON IT.[28]

103.   On November 28, 2016, the owner of a 2016 Ram 150 filed the

following complaint with NHTSA:

> TL* THE CONTACT OWNS A 2016 DODGE RAM 1500. WHILE DRIVING VARIOUS SPEEDS, THE HEADLIGHTS INADVERTENTLY TURNED OFF WITHOUT WARNING. THE VEHICLE WAS TAKEN TO THE DEALER WHERE IT WAS DIAGNOSED, BUT NO FAILURES WERE FOUND. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE WAS 200. UPDATED 02/07/2017*CT CONSUMER STATED HAD FLICKERING LIGHT ISSUES. UPDATED 7/11/18*JB[29]

104.   On June 13, 2017, the owner of a 2015 Ram 1500 filed the following

complaint with NHTSA:

> TWO TIMES IN THE LAST MONTH WHEN WE ENTERED THE NOTED VEHICLE THE DASH LIGHTS CAME ON AS EXPECTED BUT WHEN THE IGNITION BUTTON WAS PUSHED TO START THE VEHICLE DASH BECAME TOTALLY BLACK AN THE VEHICLE WOULD NOT START LIKE THERE WAS NO ELECTRIC POWER , AFTER ABOUT A MINUTE ALL DASH LIGHTS CAME ON AGAIN AND THE VEHICLE WAS ABLE TO BE STARTED. IMMEDIATELY AFTER THE FIRST TIME I TOOK IT TO A DEALER AND WAS INFORMED THEY COULD NOT FIND THE REAL PROBLEM,I AM TAKING IT TO A DIFFERENT DEALER TOMORROW FOR THE SAME SITUATION.[30]

105.   On January 4, 2018, the owner of a 2016 Ram 1500 filed the following

complaint with NHTSA:

---

[28] NHTSA ID 10914886.

[29] NHTSA ID 10928272.

[30] NHTSA ID 10994989.

WHILE DRIVING THE TRUCK AT NIGHT THE LIGHTS FLICKER ALMOST LIKE AS IF YOU WERE FLASHING YOUR LIGHTS AT SOMEONE IN FRONT OF YOU, THIS TRUCK HAS BEEN TO DEALERSHIP A TOTAL OF 16 TIMES FOR THIS REASON. FIRST THEY TOLD ME IT WAS THE WAY DODGE BUILT MY TRUCK AND THAT IT WAS NORMAL, THEN NEXT TIME WE TOOK IT IN THEY TOLD ME THAT IT WAS MY TOLL TAG, I QUESTIONED OK WHICH IS IT DODGE MADE MY TRUCK THIS WAY OR MY TOLL TAG, WE GOT NO RESPONSE. NOW THEY JUST PUT MY SHOP IN THE BAY AND LEAVE IT AND DO NOTHING TO IT FOR A COUPLE OF DAYS THEN CALL ME AND TELL ME IT'S READY, YEA BEEN CAUGHT ON CAMERA BUDDIES, SEE HOW WARRANTY LIKES THOSE VIDEOS ,Y'ALL CHARGING WARRANTY FOR THE WORK BUT YOUR CAUGHT ON CAMERA DOING ABSOLUTELY NOTHING TO MY TRUCK . GOOD LUCK[31]

106.   On May 21, 2018, the owner of a 2016 Ram 1500 filed the following complaint with NHTSA:

I KEEP HAVING PROBLEMS WITH THE ELECTRICAL SYSTEM IN THE TRUCK. THE PLUGIN AREAS FOR ELECTRONIC DEVICES IN THE REAR PASSENGER KEEPS BURNING OUT FUSES. I AM ALSO HAVING ISSUES WITH MY CRUISE CONTROL BUTTON ON THE STEERING WHEEL ACTING LIKE IT HAS A SHORT TURNING ITSELF ON AND OFF. THIS HAPPENS WHEN I AM DRIVING THE VEHICLE OR IN THE DRIVE WAY AS WELL.[32]

107.   On July 16, 2018, the owner of a 2018 Ram 1500 filed the following complaint with NHTSA:

STARTED CAR IN MORNING AND BACK UP CAMERA FLASHED ON AND WOULD NOT COME BACK ON. PUT CAR IN PARK AND REVERSE AND STILL NO PICTURE. TURNED CAR

---

[31] NHTSA ID 11058421.

[32] NHTSA ID 11097024.

OFF AND STILL NO PICTURE. THE MANUAL CAMERA BUTTON WOULD NOT ACTIVATE CAMERA EITHER.[33]

108. On September 5, 2018, the owner of a 2019 Ram 1500 filed the following complaint with NHTSA:

A WEEK AFTER BUYING THE CAR I NOTICED WATER UNDER THE CARPET IN THE BACK SEAT AREA , I THOUGHT I SPILLED SOMTHING SO I JUST DRIED IT AND REMOVED THE CARPET FOR 2 DAYS ...THEN SUDDENLY FEW DAYS LATER I FEEL LIKE I CAN HEAR THE OUTSIDE STREET MORE THEN NORMAL AND ALSO I COULD HEAR THE BACK WINDOW SHAKING EVERYTIME THE CAR IS GOING OVER A HUMP. THEN AFTER FEW DAYS ON A VERY RAINY DAY , I SEE WATER DRIPPING FROM THE TOP OF MY BACK WINDOW .NOW BY LOOKING AT BACK WINDOW AND TOUCJING IT IT FEEL LOOSE !! SO I DROPPED IT ON A DAY THAT THE LEAK GUY WORKING AT THE LOCAL DEALER JUST TO TELL ME THAT ITS ALL FIXED ...WHEN I TOLD THEM YOU SURE ?? MY ALL WINDOW IS LOOSE THEN SERVICE OPORATION MANAGER TOLD ME THAT THE BACK WINDOW IS DIFECTED AND MUST BE REPLACED . THIS WAS ON JULY 26 2018 ....NOW ITS SEP.5 AND IM STILL DONT HAVE THE CAR...IVE BEEN DRIVING A LOANER FOR ALL THIS TIME[34]

109. On November 27, 2018, the owner of a 2016 Ram 1500 filed the following complaint with NHTSA:

 WHEN IS RAINING PARK OR DRIVING PASSENGER BRAKE TAIL LIGHT INDICATE OUT, MIRROR WON'T CLOSE, DRIVER SIDE WINDOW WON'T WORK, DASH BOARD LIGHTS WILL BE FLASHING ON/OFF AND BUCK UP CAMERA HAS A BLACK/ COLOR LINE SCREEN, FRONT DIFFERENTIAL HAS A

---

[33] NHTSA ID 11111715.

[34] NHTSA ID 11124661.

CRACK ON IT.[35]

110.   On February 3, 2019, the owner of a 2017 Ram 1500 filed the following

complaint with NHTSA:

> DURING HEAVY RAIN THE BACK DRIVER SIDE WELL
> (UNDERNEATH REAR SEAT-STORAGE AREA) FILLS
> WITH WATER. I HAVE AN APPOINTMENT TOMORROW TO
> DIAGNOSIS THE ISSUE. I BELIEVE THIS IS A PROBLEM WITH
> THE REAR WINDOW DRAIN HOLES BEING PLUGGED BUT
> NOT CERTAIN. ONLY A YEAR OLD AND SURPRISED THIS
> OCCURRED. CHECKED YOUTUBE AND FOUND THIS ISSUE
> WITH OLDER MODELS OF RAM TRUCKS. ITS TAKEN A ACT
> OF CONGRESS TO GET DEALER TO SCHEDULE A FIX FOR
> THIS PROBLEM. WENT TO LOCAL DEALER AND THEY TRIED
> TO REDIRECT TO A WATER SPECIALIST LOCALLY. THEY
> WERE AVOIDING THE WARRANTY OR JUST PLAIN LAZY.
> COME ON DODGE YOU CAN DO BETTER. I HAVE NOTICED
> THIS FROM THE TRUCK BEING PARKED IN FRONT OF MY
> HOME. I NOW PLACE TOWELS TO CAPTURE WATER ON
> RAINY DAYS.[36]

111.   On February 28, 2019, the owner of a 2017 Ram 1500 filed the

following complaint with NHTSA:

> TL* THE CONTACT OWNS A 2017 RAM 1500. THE CONTACT
> STATED THAT REAR SEATS WERE DRENCHED
> WITH WATER, WHICH CAUSED A FOUL ODOR INSIDE THE
> VEHICLE. THE VEHICLE WAS TAKEN TO MULTIPLE
> UNKNOWN INDEPENDENT MECHANICS WHERE THE
> CONTACT WAS INFORMED THAT THE SEAL ON THE THIRD
> BRAKE LIGHT WAS FRACTURED AND NEEDED TO BE
> REPLACED. THE FAILURE CAUSED WATER TO ENTER THE
> VEHICLE. AFTER THE VEHICLE WAS REPAIRED, THE "REAR
> BRAKE LIGHT OUT" AND "KEY FOB LEFT THE VEHICLE"

---

[35] NHTSA ID 11154161.

[36] NHTSA ID 11173786.

WARNING MESSAGES ILLUMINATED. THE VEHICLE WAS TAKEN TO ANOTHER INDEPENDENT MECHANIC WHERE THE CONTACT WAS INFORMED THAT THE THIRD BRAKE LIGHT WAS INOPERABLE. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT MADE AWARE OF THE FAILURES. THE FAILURE MILEAGE WAS 26,320.[37]

112.   On March 10, 2019, the owner of a 2016 Ram 1500 filed the following complaint with NHTSA:

THE HORN AND THE STEERING WHEEL CONTROLS DO NOT WORK. THE HORN WILL WORK WHEN LOCKING MY VEHICLE WITH THE KEY FOB BUT NOT BY PRESSING THE HORN. THE CONTROLS ON THE STEERING WHEEL DO NOT WORK AT ALL.[38]

113.   On March 11, 2019, the owner of a 2018 Ram 1500 filed the following complaint with NHTSA:

I HAVE A RADIO THAT IS NOT OPERATING CORRECTLY AND ACCORDING TO CHRYSLER THERE IS NO FIX AND/OR COULD NEVER BE A FIX[39]

114.   On June 5, 2019, the owner of a 2019 Ram 1500 filed the following complaint with NHTSA:

TL* THE CONTACT OWNS A 2019 RAM 1500. THE CONTACT STATED THAT THE WINDSHIELD WIPERS MOVED SLOWLY WHILE DRIVING IN A STORM. THE CONTACT COULD NOT SEE THE ROAD DUE TO THE WATER ON THE WINDSHIELD. THE CONTACT HAD TO WAIT FOR THE STORM TO PASS AS THE WINDSHIELD WIPERS CONTINUED TO MOVE SLOWLY. THE VEHICLE WAS NOT DIAGNOSED OR REPAIRED. THE

[37] NHTSA ID 11183262.

[38] NHTSA ID 11185690.

[39] NHTSA ID 11185888.

MANUFACTURER AND DEALER WERE NOT MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 424.[40]

115.   On September 27, 2019, the owner of a 2018 Ram 1500 filed the following complaint with NHTSA:

THE BACK UP CAMERA GOES OUT AND BLACK OUTS AT TIMES. SOMETIMES IT LOOKS LIKE A OLD TV WITH WAVY LINES. THE DRIVERS WINDOW CONTROLLER, YOU HAVE THE ABILITY TO USE AUTO DOWN AND AUTO UP. AT TIMES, YOU MUST HOLD UP ON THE WINDOW SWITCH TO MAKE THE WINDOW GO UP. THE HEADLIGHTS COME ON WHEN YOU ENTER A DARK GARAGE AND WHEN YOU PULL OUT THEY STAY ON. MY VEHICLE DOES NOT HAVE DAYTIME RUNNING LIGHTS. THE HEADLIGHTS WILL COME ON DURING MORNING WITH FULL SUNSHINE. SOMETIMES THERE IS A VERY LOUD KNOCKING COMING FROM THE MOTOR . SOUNDS LOVE LIKE A BAD VALVE.[41]

116.   On January 22, 2020, the owner of a 2018 Ram 1500 filed the following complaint with NHTSA:

TL* THE CONTACT OWNS A 2018 RAM 1500. WHILE DRIVING AT VARIOUS SPEEDS WITH THE AIR CONDITIONER OR HEAT ACTIVATED, THERE WAS AN ABNORMAL MUSTY AND OR MOLDY ODOR DETECTED. THERE WERE NO WARNING LIGHTS ILLUMINATED. THE VEHICLE WAS TAKEN TO AUFFENBERG DEALER GROUP 187 AUTO CT, O'FALLON, IL 62269 (618) 624-2277 BUT WAS NOT DIAGNOSED OR REPAIRED. THE MANUFACTURER WAS CONTACTED AND MADE AWARE OF THE ISSUE. THE FAILURE MILEAGE WAS APPROXIMATELY 18,000.[42]

---

[40] NHTSA ID 11218042.

[41] NHTSA ID 11258665.

[42] NHTSA ID 11301173.

117.  On February 19, 2020, the owner of a 2019 Ram 1500 filed the following complaint with NHTSA:

> REAR POWER SLIDING WINDOW DEVELOPS CRACKS AT THE TOP ON BOTH SIDES OF THE CENTER GLASS. WINDOW LEAKS INTO CAB WHEN MOISTURE IS PRESENT OUTSIDE THE VEHICLE SUCH AS SNOW, RAIN OR CAR WASH. I AM TRYING TO GET RAM/FCA TO FIX ISSUE BUT THEY ARE NOT CALLING ME BACK. MANY 2019 RAM TRUCKS ARE HAVING THIS ISSUE.[43]

118.  On March 10, 2020, the owner of a 2018 Ram 1500 filed the following complaint with NHTSA:

> TRUCK LEAKS SOMEWHERE. IT IS IN THE SHOP RIGHT NOW FOR THE 3RD TIME FOR THE LEAK. GOT TOLD IT WAS FIXED 2 TIMES ALREADY AND IT STILL LEAKED. THE TRUCK HAS HEATED BACK SEATS AND THAT'S WHERE THE TRUCK HOLDS WATER, UNDERNEATH THE BACK SEAT STORAGE. I WON'T USE THE HEATED BACK SEATS CAUSE MY CARPET STAYS WET WHEN IT'S RAINING. THERE IS ALSO A SUBWOOFER UNDER THE BACKSEAT WHERE IT HOLDS WATER, IT'S GOTTEN REPLACED ONCE ALREADY FROM THE WATER DAMAGE. AND IT HAS GOTTEN WET AGAIN. THE CARPET GOT REPLACED ONCE, THERE WAS MOLD, AND THE CARPET GOT WET AGAIN SO THEY ARE GOING TO HAVE TO REPLACE IT AGAIN CAUSE THERE IS MORE THAN LIKELY MOLD FROM IT HOLDING WATER.[44]

119.  On March 24, 2020, the owner of a 2019 Ram 1500 filed the following complaint with NHTSA:

> LEAK IN  CEILING  HEAD  LINER WET AND  DISCOLORING

---

[43] NHTSA ID 11310037.

[44] NHTSA ID 11317423.

RADIO SCREEN DIED TWICE. HAS SHIFTING PROBLEM FROM 1ST TO SECOND SOMETIMES WANT MY OLD TRUCK BACK PLEASE[45]

120.   Each of these complaints were filed before Plaintiff Norman purchased her Class Vehicle. Many of them were filed before Plaintiff Creech and Plaintiff Jones purchased their Class Vehicles.

121.   Moreover, these complaints represent a sampling of the complaints posted on NHTSA's website and other internet sources.

122.   FCA also knew about the Water Intrusion Defect from its warranty data. Per the TREAD Act, FCA tracks vehicle diagnoses and repairs from dealership technicians in a single, aggregated database.[46] FCA employs persons who monitor the database for repair trends, and engineering and management staff review such trends in regular meetings. For every one complaint filed with NHTSA, FCA likely receives hundreds or thousands of related warranty claims.[47] Accordingly, FCA has

---

[45] NHTSA ID 11319184.

[46] https://www.autosafety.org/wp-content/uploads/import/TREAD%20Fact%20Sheet%2011.24.14.pdf (attached as Exhibit G).

[47]   *See, e.g.*, https://www.reuters.com/article/autos-ford-defect/u-s-nhtsa-probes-725000-ford-vehicles-for-engine-flaw-idUSL1N0BP51Y20130225 (123 NHTSA complaints, 27,505 warranty claims) (attached as Exhibit H); https://static.nhtsa.gov/odi/rcl/2022/RCLRPT-22V406-1555.PDF (3 field reports, 1,061 warranty claims) (attached as Exhibit I); https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V475-1719.PDF (six field reports, 1,020 warranty claims) (attached as Exhibit J).

likely received thousands of the Water Intrusion Defect warranty claims, starting in 2016, before Plaintiff Norman purchased her Class Vehicle in 2020.

123.   Further, FCA knew based on complaints and discussions in online forums, which FCA monitors to track product performance and customer satisfaction. For example, on 5thgenrams.com, a forum related to the Class Vehicles, there is a thread started on May 18, 2019, entitled "Water Stained Headliner above Rear Window" which discusses the Water Intrusion Defect for over five pages, with dozens of recounts and discussions predating Plaintiff's purchase. Notably, Ram Trucks Customer Care—FCA's customer support division for Ram products—operates an account on this forum and provides customer support. Similar narratives and discussions appear in other Ram forums.

124.   The Water Intrusion Defect substantially impairs the use, value, and safety of the Class Vehicles and renders them substantially less drivable, safe, useful, and valuable.

125.   As a result of the Water Intrusion Defect, all Class Vehicles are unfit for the purpose of providing safe and reliable transportation.

126.   Despite FCA's knowledge of the serious safety and health risks the Water Intrusion Defect causes in the Class Vehicles, it has not disclosed the Water Intrusion Defect or provided an adequate repair.

**D.    FCA Touted the Class Vehicles as Safe and Reliable Vehicles While Omitting the Water Intrusion Defect**

127.   FCA knowingly marketed and sold/leased the Class Vehicles with the Water Intrusion Defect, while willfully omitting and concealing the true inferior quality and substandard performance of the Class Vehicles.

128.    FCA directly markets, for its benefit, the Class Vehicles to consumers via extensive nationwide multimedia advertising campaigns on television, the internet, billboards, print, mailings, social media, and other mass media, which impart a universal and pervasive marketing message: safe and reliable family vehicles.

129.   For example, in the sales brochure for the 2016 Ram 1500, FCA not only depicted the Class Vehicles as being durable vehicles that can survive the elements, but also advertised certain technologies which are casualties of the Water Intrusion Defect[48]:

---

[48]   https://autotrends.org/brochures/2016-ram-1500-brochure.pdf   (attached as Exhibit K).





130.   FCA made similar depictions and statements for its 2017 and 2018 Ram

1500 Class Vehicles:[49]

---

[49]   https://cdn.dealereprocess.org/cdn/brochures/ram/2017-1500.pdf   (2017) (attached as Exhibit L); https://cdn.dealereprocess.org/cdn/brochures/ram/2018-1500.pdf (2018) (attached as Exhibit M).









131. FCA continued its messaging for the 2019 and 2020 RAM 1500 trucks, stating that it is "The Strongest Ram 1500 Ever," while depicting its structural integrity[50]:

---

[50] https://cdn.dealereprocess.org/cdn/brochures/ram/2019-1500.pdf (2019) (attached as Exhibit N); https://cdn.dealereprocess.org/cdn/brochures/ram/ca/2020-1500.pdf (2020) (attached as Exhibit O).



132.    FCA made similar statements and depictions for the 2021 and 2021

Ram 1500 Trucks[51]:

51      https://cdn.dealereprocess.org/cdn/brochures/ram/2021-1500.pdf        (2021)
(attached as Exhibit P); https://cdn.dealereprocess.org/cdn/brochures/ram/ca/2022-
1500.pdf (2022) (attached as Exhibit Q).





133.   The above examples are a representative sampling of FCA's branding and marketing of the Class Vehicles.

134.   FCA not only marketed the Class Vehicles as durable and reliable trucks; FCA has been pervasively branding its trucks the same way for years.

135. Although FCA markets the Class Vehicles as durable and reliable trucks, in the field, the Class Vehicles fail to meet that promise. Instead, FCA omits the true natures of the Class Vehicles and the fact that the Class Vehicles suffer from the Water Intrusion Defect. FCA has never disclosed the Water Intrusion Defect to Plaintiffs or the other Class members.

136. Plaintiffs and the other Class members were exposed to FCA's pervasive and long terms marketing campaign touting the supposed quality and reliability of the Class Vehicles, and Plaintiffs and the other Class members justifiably made their decisions to purchase or lease their Class Vehicles based on FCA's misleading marketing that omitted the Water Intrusion Defect.

137. FCA has actively concealed the Water Intrusion Defect throughout the Class period despite its pervasive knowledge. Specifically, FCA has:

      a.    Failed to disclose, at and after the time of purchase, lease, and/or service, any and all known material defects of the Class Vehicles, including the Water Intrusion Defect;

      b.    Failed to disclose, at and after the time of purchase, lease, and/or service, that the Class Vehicles' suffered the Water Intrusion Defect, were defective, and not fit for their intended purposes;

      c.    Failed to disclose, and actively concealed, the fact that the Class Vehicles suffered the Water Intrusion Defect and were defective, despite that

FCA learned of the Water Intrusion Defect as early as 2016 or before, and certainly well before Plaintiffs and the other Class members purchased or leased their Class Vehicles; and

      d.    Failed to disclose, and actively concealed, the existence and pervasiveness of the Water Intrusion Defect even when Class members directly asked about it during communications with FCA, FCA dealerships, and FCA service centers.

**E.    FCA's Warranties**

138.   FCA issued a Limited Vehicle Warranty for the Class Vehicles. FCA issued its Limited Vehicle Warranty for the benefit of Plaintiffs and the other Class members, and for the purpose of persuading Plaintiffs and the other Class members to purchase the Class Vehicles.

139.   The Limited Vehicle Warranty states, in part:

> The Basic Limited Warranty covers the cost of all parts and labor needed to repair any item on your vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation. There is no list of covered parts since the only exception are tires and Unwired headphones.[52]

---

[52]    https://msmownerassets.z13.web.core.windows.net/assets/publications/en-us/Ram/2019/1500_DT/9706.pdf (attached as Exhibit R).

140.   The Limited Vehicle Warranty lasts for 36 months or 36,000 miles, whichever occurs first.[53]

141.   The Limited Vehicle Warranty only covers the "rear window" for 12 months or 12,000 miles, whichever occurs first.[54]

142.   FCA instructs vehicle owners and lessees to bring their vehicles to a certified dealership for the warranty repairs. Many owners and lessees have presented Class Vehicles to FCA-certified dealerships with complaints arising from the Water Intrusion Defect and have been denied free repair.

143.   FCA has evaded its warranty obligations by (1) failing to tell consumers that the Class Vehicles are defective and (2) refusing to perform repairs to correct the Water Intrusion Defect.

144.   Moreover, FCA's warranty fails its essential purpose because it has failed to offer an effective and permanent repair for the Water Intrusion Defect. Rather, FCA simply replaces one defective part with an equally defective part and fails to correct the underlying cause.

145.   Plaintiff provided FCA with written notice on June 3, 2022 via certified mail, and FCA acknowledged receipt on June 6, 2022.

---

[53] *Id.*

[54] *Id.*

146.   FCA also has notice based on its actual and exclusive knowledge of the defect.

147.   Moreover, FCA's failure to effectively repair the Water Intrusion Defect makes any notice requirement futile.

**F.  Relationship between FCA and its Dealerships**

148.   Upon information and belief, FCA has impliedly or expressly acknowledged the relationship between FCA and its authorized dealerships, as is shown by the following:

a.    FCA can terminate the relationship with its dealers at will;

b.    The relationships are indefinite;

c.    FCA is in the business of selling vehicles as are its dealers;

d.    FCA controls the marketing of the vehicles;

e.    FCA provides tools and resources to help FCA dealers sell vehicles;

f.    FCA supervises its dealers regularly;

g.    Without FCA, the relevant FCA dealers would not exist;

h.    FCA requires the following of its dealers:

i.    Reporting of sales;

ii.    Computer network connection with FCA;

iii.    Training of dealers' sales and technical personnel;

iv.    Use of FCA-supplied computer software;

v.      Participation in FCA's training programs;

vi.      Establishment and maintenance of service departments in FCA dealerships;

vii.      Certification of FCA pre-owned vehicles;

viii.      Reporting to FCA with respect to the car delivery, including reporting Plaintiffs' names, addresses, preferred titles, primary and business phone numbers, e- mail addresses, vehicle VIN numbers, delivery date, type of sale, lease/finance terms, factory incentive coding, if applicable, vehicles' odometer readings, extended service contract sale designations, if any, and names of delivering dealership employees; and

ix.      Displaying FCA logos on signs, literature, products, and brochures within FCA dealerships.

i.      Dealerships bind FCA with respect to:

    i.      Warranty repairs on the vehicles the dealers sell; and

    ii.      Issuing service contracts administered by FCA.

j.      FCA further exercises control over its dealers with respect to:

    i.      Financial incentives given to FCA dealer employees;

    ii.      Locations of dealers;

iii.    Testing and certification of dealership personnel to ensure compliance with FCA's policies and procedures; and

iv.    Customer satisfaction surveys, pursuant to which FCA allocates the number of FCA cars to each dealer, thereby directly controlling dealership profits.

k.    Dealerships bear FCA's brand names, use FCA's logos in advertising and on warranty repair orders, post FCA-branded signs for the public to see, and enjoy a franchise to sell FCA's products, including the Class Vehicles.

l.    FCA requires FCA dealers to follow the rules and policies of FCA in conducting all aspects of dealer business, including the delivery of FCA's warranties described above, and the servicing of defective vehicles such as the Class Vehicles.

m.    FCA requires its dealers to post FCA's brand names, logos, and signs at dealer locations, including dealer service departments, and to identify themselves and to the public as authorized FCA dealers and servicing outlets for FCA cars.

n.    FCA requires its dealers to use service and repair forms containing FCA's brand names and logos.

o.   FCA requires FCA dealers to perform FCA's warranty diagnoses and repairs, and to do the diagnoses and repairs according to the procedures and policies set forth in writing by FCA.

p.   FCA requires FCA dealers to use parts and tools either provided by FCA, or approved by FCA, and to inform FCA when dealers discover that unauthorized parts have been installed on one of FCA's vehicles.

q.   FCA requires dealers' service and repair employees to be trained by FCA in the methods of repair of FCA-brand vehicles.

r.   FCA audits FCA dealerships' sales and service departments and directly contacts the customers of said dealers to determine their level of satisfaction with the sale and repair services provided by the dealers; dealers are then granted financial incentives or reprimanded depending on the level of satisfaction.

s.   FCA requires its dealers to provide FCA with monthly statements and records pertaining, in part, to dealers' sales and servicing of FCA vehicles.

t.   FCA provides technical service bulletins and messages to its dealers detailing chronic defects present in product lines, and repair procedures to be followed for chronic defects.

u.   FCA provides its dealers with specially trained service and repair consultants with whom dealers are required by FCA to consult when dealers are unable to correct a vehicle defect on their own.

v.   FCA requires FCA vehicle owners to go to authorized FCA dealers to obtain servicing under FCA warranties.

w.   FCA dealers are required to notify FCA whenever a car is sold or put into warranty service.

## G.   Tolling of the Applicable Statutes of Limitation

149.   FCA's knowing and active concealment and denial of the facts alleged herein act to toll any applicable statute(s) of limitations. Plaintiffs and the other Class members could not have reasonably discovered the Water Intrusion Defect within the time period of any applicable statute of limitations.

150.   In addition, even after Plaintiffs and other Class members contacted FCA and/or its authorized dealers to repair the Water Intrusion Defect, FCA and/or its dealers repeatedly and consistently told them the Class Vehicles were not defective. In fact, FCA has issued several TSBs which fail to disclose the true nature, cause, and remedy for the Water Intrusion Defect. Rather, FCA simply instructs technicians to perform a futile repair.

151.   FCA has had, and continues to have, a duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Class Vehicles,

including the facts that the Class Vehicles require costly repairs, pose safety concerns, and have a diminished resale value. As a result of FCA's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## CLASS ACTION ALLEGATIONS

152.   Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4), on behalf of the following classes:

**The Nationwide Class**
All persons or entities who purchased or leased a Class Vehicle.

**The Alabama Class**
All persons or entities who purchased or leased a Class Vehicle in Alabama.

**The California Class**
All persons or entities who purchased or leased a Class Vehicle in California.

**The Georgia Class**
All persons or entities who purchased or leased a Class Vehicle in Georgia.

**The Texas Class**
All persons or entities who purchased or leased a Class Vehicle in Texas.

153.   Excluded from the Classes are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for

resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Class definition.

154. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

155. This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

156. **Numerosity (Federal Rule of Civil Procedure 23(a)(1))** – The members of the Class are so numerous that their individual joinder is impracticable. FCA sold hundreds of thousands of Class Vehicles across the United States. The number and identity of Class members can be obtained through business records regularly maintained by Defendant, its employees and agents, and state agencies. Members of the Class can be notified of the pending action by e-mail and mail, supplemented by published notice, if necessary.

157. **Commonality and Predominance (Federal Rule of Civil Procedure 23(a)(2))** – There are questions of law and fact common to the Class. These questions predominate over any questions only affecting individual Class members. The common legal and factual issues include, but are not limited to:

      a.     whether Defendant engaged in the conduct alleged herein;

b. whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States;

c. whether Defendant designed, manufactured, marketed, distributed, leased, sold, or otherwise placed Class Vehicles into the stream of commerce in the United States knowing about the Water Intrusion Defect;

d. when Defendant learned of the Water Intrusion Defect;

e. Whether Defendant concealed the Water Intrusion Defect from consumers;

f. Whether FCA failed to disclose or omitted the Water Intrusion Defect;

g. Whether the Water Intrusion Defect is material;

h. Whether the class vehicles are merchantable;

i. Whether FCA honored its warranty;

j. whether Plaintiff and other Class members have been harmed by the fraud alleged herein;

k. whether Plaintiff and the other Class members overpaid for their Class Vehicles;

l. whether Plaintiff and the other Class members are entitled to damages or other relief; and

m.     whether Plaintiffs and the other Class members are entitled to equitable relief in the form of rescission of the purchase agreement or other injunctive relief and, if so, in what amount.

158.   **Typicality (Federal Rule of Civil Procedure 23(a)(3))** – Plaintiffs' claims are typical of the claims of each of the other Class member of. Plaintiffs, like all other Class members, have sustained damages arising from FCA's conduct as alleged herein. Plaintiffs and the other Class members were and are similarly or identically harmed by FCA's unlawful, deceptive, unfair, systematic, and pervasive pattern of misconduct.

159.   **Adequacy (Federal Rule of Civil Procedure 23(a)(4))** – Plaintiffs will fairly and adequately represent and protect the interests of the other Class members and has retained counsel who are experienced and competent trial lawyers in complex litigation and class action litigation. There are no material conflicts between Plaintiffs' claims and those of the other Class members that would make class certification inappropriate. Counsel for the Class will vigorously assert all Class members' claims.

160.   **Superiority (Federal Rule of Civil Procedure 23(b)(3))** – This suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3), because questions of law and fact common to the Class predominate over the questions affecting only individual Class members and a class action is superior to

other available means for the fair and efficient adjudication of this dispute. The damages suffered by individual Class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct. Further, it would be virtually impossible for Class members to individually redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. In addition, individualized litigation increases the delay and expense to all parties and to the court system resulting from complex legal and factual issues of the case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties; allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

161. **Issues Class:** Alternatively, Plaintiffs seek certification pursuant to Federal Rule of Civil Procedure 23(c)(4) on behalf of the above-defined classes for some or all the issues identified in the commonality and predominance section, above, as well as other issues which may be later identified.

## CLAIMS

**A.      Claim Brought on Behalf of the Nationwide Class or, Alternatively, the Alabama, California, Georgia, and Texas Classes**

### COUNT I
### VIOLATIONS OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*

162.   Plaintiffs incorporate by reference paragraphs 1-161, as if fully set forth herein.

163.   Plaintiffs bring this claim individually and on behalf of the Nationwide Class or, alternatively, the Alabama, California, Georgia, and Texas Classes.

164.   Plaintiffs and the other Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

165.   FCA is a supplier and warrantor within the meaning of 15 U.S.C. §§ 2301(4)-(5).

166.   The Class Vehicles are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

167.   FCA's Limited Warranty is a "written warrant[y]" within the meaning of 15 U.S.C. § 2301(6).

168.    FCA breached the express warranties by:

a.      **s**elling and leasing Class Vehicles with the Water Intrusion Defect, requiring repair or replacement within the warranty period; and

b.      refusing and/or failing to honor the express warranties by

repairing or replacing, free of charge, the vehicles' component parts in order

to remedy the Water Intrusion Defect.

169.   Plaintiffs and the other Class members relied on the existence and

length of the express warranties in deciding whether to purchase or lease the Class

Vehicles.

170.   FCA's breach of the express warranties has deprived Plaintiffs and the

other Class members of the benefit of their bargain.

171.   The amount in controversy of Plaintiffs' individual claims meets or

exceeds the sum or value of $25.000. In addition, the amount in controversy meets

or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed

on the basis of all claims to be determined in this suit.

172.   FCA has been afforded a reasonable opportunity to cure their breach of

the written warranties and/or Plaintiffs and the other Class members were not

required to do so because affording FCA a reasonable opportunity to cure their

breach of written warranties would have been futile. FCA was also on notice of the

alleged defect from the complaints and service requests it received from Class

members, as well as from their own warranty claims, customer complaint data,

and/or parts sales data. Moreover, Plaintiff Norman provided FCA written notice of

her claims on June 3, 2022 via certified mail, and FCA acknowledged receipt on

June 6, 2022. Additionally, Plaintiffs Creech, Jones, and McFarland, individually and on behalf of the other Nationwide, California, Georgia, and Texas Class members, notified FCA of the Water Intrusion Defect—and FCA's corresponding breach of warranty—through notice letters dated August 30, 2022 (Jones), September 14, 2022 (Creech), and September 28, 2022 (McFarland), and sent by United States Certified Mail to FCA through its counsel. FCA was also provided notice of the Water Intrusion Defect through numerous complaints filed against it directly and through its dealers as well as its own internal engineering knowledge.

173.   As a direct and proximate cause of FCA's breach of the written warranties, Plaintiffs and the other Class members sustained damages and other losses in an amount to be determined at trial. FCA's conduct damaged Plaintiffs and the other Class members, who are entitled to recover actual damages, consequential damages, specific performance, diminution in value, costs, including statutory attorney fees and/or other relief as deemed appropriate.

**B.     Claims Brought on Behalf of the Alabama Class**

### COUNT II
### Violations of the Alabama Deceptive Trade Practices Act
### Ala. Code §§ 8-9-1, *et seq.*

174.   Plaintiff Norman ("Plaintiff," for purposes of the Alabama Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

175.   Plaintiff brings this claim individually and on behalf of the Alabama Class (the "Class," for purposes of this Count).

176.   FCA, Plaintiff, and the other Class members are "persons" within the meaning of Ala. Code § 8-19-3(5). Plaintiff and the other Class members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

177.   The Class Vehicles are "goods" within the meaning of Ala. Code § 8-19-3(3).

178.   FCA is engaged in "trade" or "commerce" within the meaning of Ala. Code § 8-19-3(8).

179.   The Alabama Deceptive Trade Practices Act (ADTPA), Ala. Code. § 8-19-5, prohibits "[e]ngaging in . . . unconscionable, false, or deceptive act[s] or practice[s] in business, commerce, or trade."

180.   By the conduct described in detail above and incorporated herein, FCA engaged in unfair or deceptive acts in violation of Ala. Code. § 8-19-5.

181.   FCA's omissions regarding the true nature of the Class Vehicles as well as the Water Intrusion Defect, a serious safety and health risk, are material facts a reasonable consumer would want to know and would have considered in deciding whether or not to purchase the vehicle or pay the same price.

182.   FCA intended for Plaintiff and the other Class members to rely on FCA's omissions of fact regarding the Water Intrusion Defect.

183.   Plaintiff and the other Class members justifiably acted or relied to their detriment upon FCA's omissions of fact concerning the true nature of the Class Vehicles as well as the Water Intrusion Defect, as evidenced by Plaintiff's purchase of her vehicle.

184.   Had FCA disclosed all material information regarding the true nature of the Class Vehicles as well as the Water Intrusion Defect to Plaintiff and the other Class members, then Plaintiff and the other Class members would not have purchased or leased the vehicle or would have paid less to do so.

185.   FCA's omissions deceived Plaintiff and the other Class members.

186.   In addition to being deceptive, the business practices of FCA were unfair because FCA knowingly sold to Plaintiff and the other Class members defective vehicles that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to any competition under all of the circumstances. Moreover, in light of FCA's exclusive knowledge of the true nature of the Class Vehicles as well as the Water Intrusion Defect, the injury is not one that Plaintiff could have reasonably avoided.

187.   Further, and to the extent required by law, FCA had a duty to disclose the true nature of the Class Vehicles as well as the Water Intrusion Defect because disclosure was necessary to dispel misleading impressions about the Class Vehicles'

reliability and durability that were or might have been created by partial representation of the facts. Specifically, FCA promoted, through its advertisements available to all Class members, that the vehicles were reliable and durable. FCA also disclosed information concerning the Class Vehicles in window stickers associated with the Class Vehicles, without disclosing that they contained an inherent defect that would be material to any purchaser or lessee. Specifically, FCA owed Plaintiff and the Class members a duty to disclose all the material facts concerning the Water Intrusion Defect because it possessed exclusive knowledge, it intentionally concealed the true nature of the Class Vehicles as well as the Water Intrusion Defect from Plaintiff and the other Class members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

188.    FCA's unfair or deceptive acts or practices were likely to, and did, in fact, deceive consumers, including Plaintiff and the other Class members, about the true reliability, dependability, efficiency, and quality of the Class Vehicles.

189.    FCA's violations present a continuing risk to Plaintiff and the other Class members, as well as to the general public. FCA's unlawful acts and practices complained of herein affect the public interest.

190.    Plaintiff and the other Class members suffered ascertainable loss and actual damages as a direct result of FCA's concealment of and failure to disclose material information, namely, the Water Intrusion Defect. Plaintiff and the other

Class members who purchased or leased the Class Vehicles would not have done so, or would have paid significantly less, if the true nature of the Class Vehicles had been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles.

191.   Pursuant to Ala. Code § 8-19-10, Plaintiff and the other Class members seek an order enjoining FCA's unfair and/or deceptive acts or practices and awarding damages, treble damages, and any other just and proper relief available under the ADTPA.

192.   Plaintiff provided FCA with written notice on June 3, 2022 via certified mail, and FCA acknowledged receipt on June 6, 2022.

**COUNT III**
**BREACH OF EXPRESS WARRANTY**
**Ala. Code §§ 7-2-313 and 7-2A-210**

193.   Plaintiff Norman ("Plaintiff," for purposes of the Alabama Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

194.   Plaintiff brings this claim individually and on behalf of the Alabama Class (the "Class," for purposes of this Count).

195.   FCA is and was at all relevant times a "merchant" with respect to motor vehicles under Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and a "seller" of motor vehicles under § 7-2-103(1)(d).

196.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

197.   FCA expressly warranted in its 2016 Basic Limited Warranty that it would "cover[] the cost of all parts and labor needed to repair any item on [the] vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation."

198.   FCA's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles.

199.   FCA breached the express warranty by failing to timely and adequately repair the Water Intrusion Defect.

200.   Further, to the extent that the Limited Warranty is construed to be limited to vehicle defects related to materials or workmanship, FCA has breached the Limited Warranty.

201.   The Water Intrusion Defect is a uniform defect that is related to materials.

202.   Specifically, the seals in the Class Vehicles are materials and they could suffer from inordinate wear or degradation.

203.   FCA has not repaired, and has been unable to repair, the Water Intrusion Defect.

70

204.   The Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because FCA has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

205.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

206.   Also, as alleged in more detail herein, at the time that FCA warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and FCA improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

207.   Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to FCA's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

208.   As a direct and proximate result of FCA's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

209.   Plaintiff provided FCA with written notice on June 3, 2022 via certified mail, and FCA acknowledged receipt on June 6, 2022.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Ala. Code §§ 7-2-314 and 7-2A-212

210.   Plaintiff Norman ("Plaintiff," for purposes of the Alabama Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

211.   Plaintiff brings this claim individually and on behalf of the Alabama Class (the "Class," for purposes of this Count).

212.   FCA is and was at all relevant times a "merchant" with respect to motor vehicles under Alabama Code §§ 7-2-104(1) and 7-2A-103(3) and a "seller" of motor vehicles under § 7-2-103(1)(d).

213.   With respect to leases, FCA is and was at all relevant times a "lessor" of motor vehicles under Alabama Code. § 7-2A-103(1)(p).

214.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Alabama Code §§ 7-2-105(1) and 7-2A-103(1)(h).

215.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Alabama Code §§ 7-2-314 10 and 7-2A-212.

216.   The Class Vehicles are defective because of the Water Intrusion Defect, causing sever health and safety concerns.

217.   The Water Intrusion Defect existed at the time the Class Vehicles left control of FCA.

218.   Based upon these defects, FCA has failed to meet the expectations of a reasonable consumer. The Class Vehicles are unfit for their ordinary, intended use, and do not pass without objection in the trade because they suffer from the Water Intrusion Defect, which causes foul odors, mold, mildew, electrical failures and airbag damage.

219.   Plaintiff provided FCA with written notice on June 3, 2022 via certified mail, and FCA acknowledged receipt on June 6, 2022.

220.   Moreover, notice is futile because FCA has continually failed to provide adequate remedies to Plaintiff and the other Class members.

221.   The above-described defects in the Class Vehicles were the direct and proximate cause of economic damages to Plaintiff and the other Class members.

## COUNT V
## FRAUDULENT OMISSION

222.   Plaintiff Norman ("Plaintiff," for purposes of the Alabama Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

223.   Plaintiff brings this claim individually and on behalf of the Alabama Class (the "Class," for purposes of this Count).

224.   FCA was aware of the true nature of the Class Vehicles as well as the Water Intrusion Defect when it marketed and sold the Class Vehicles to Plaintiff and the other Class members.

225.   Having been aware of the true nature of the Class Vehicles as well as the Water Intrusion Defect and having known that Plaintiff and the other Class members could not have reasonably been expected to know this information, FCA had a duty to disclose the true nature of the Class Vehicles as well as the Water Intrusion Defect to Plaintiff and the other Class members in connection with the sale or lease of the Class Vehicles.

226.   Further, FCA had a duty to disclose the true nature of the Class Vehicles as well as the Water Intrusion Defect because disclosure was necessary to dispel misleading impressions about the Class Vehicles' reliability and durable that were or might have been created by partial representation of the facts. Specifically, FCA promoted, through its advertisements available to all Class members, that the vehicles were reliable and durable. FCA also disclosed information in window

stickers associated with the Class Vehicles, without disclosing the true nature of the Class Vehicles as well as the Water Intrusion Defect, an inherent defect that would be material to any purchaser or lessee.

227.   FCA did not disclose the true nature of the Class Vehicles as well as the  Water Intrusion Defect to Plaintiff and the other Class members in connection with the sale or lease of the Class Vehicles.

228.   For the reasons set forth above, the true nature of the Class Vehicles as well as the Water Intrusion Defect comprises material information with respect to the sale or lease of the Class Vehicles.

229.   In purchasing or leasing the Class Vehicles, Plaintiff and the other Class members reasonably relied on FCA to disclose known material defects with respect to the Class Vehicles.  Had Plaintiff and the other Class members known of the true nature of the Class Vehicles as well as the Water Intrusion Defect, they would have not purchased the Class Vehicles or would have paid less for the Class Vehicles.

230.   Through its omissions regarding the true nature of the Class Vehicles as well as the latent Water Intrusion Defect, FCA intended to induce, and did induce, Plaintiff and the other Class members to purchase or lease a Class Vehicle that they otherwise would not have purchased, or to pay more for a Class Vehicle than they otherwise would have paid.

231.   As a direct and proximate result of FCA's omissions, Plaintiff and the other Class members either paid too much for the Class Vehicles or would not have purchased the Class Vehicles if the true nature of the Class Vehicles as well as the Water Intrusion Defect had been disclosed to them, and, therefore, have incurred damages in an amount to be determined at trial.

**C.    Claims Brought on Behalf of the California Class**

**COUNT VI**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT**
**Cal. Civ. Code §§ 1750 *et seq.***

232.   Plaintiff Creech ("Plaintiff," for purposes of the California Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

233.    Plaintiff brings this claim individually and on behalf of the California Class (the "Class," for purposes of this Count).

234.   Plaintiff and the other Class members were deceived by FCA's failure to disclose the true nature of the Class Vehicles as well as the Water Intrusion Defect.

235.   FCA engaged in unfair or deceptive acts or practices when, in the courts of its business, it knowingly omitted material facts as to the characteristics and qualities of the Class Vehicles.

236.   FCA failed to disclose material information concerning the Class Vehicles that it had a duty to disclose. FCA had a duty to disclose the true nature of the Class Vehicles as well as the Water Intrusion Defect because, as detailed above:

(a) FCA knew about the Water Intrusion Defect; (b) FCA had exclusive knowledge regarding the Water Intrusion Defect that was not known to the general public, Plaintiff, or the other Class members; and (c) FCA actively concealed material facts concerning the Water Intrusion Defect from the general public, Plaintiff, and the other Class members. As detailed above, the information concerning the defect was known to FCA at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase or lease the Class Vehicles.

237. FCA intended for Plaintiff and the other Class members to rely on it to provide adequately designed and adequately manufactured automobiles and to honestly and accurately reveal the problems described throughout this Complaint.

238. FCA intentionally failed or refused to disclose the true nature of the Class Vehicles as well as the Water Intrusion Defect to consumers.

239. FCA's deceptive omissions were intended to induce Plaintiff and the other Class members to believe that the Class Vehicles were adequately designed and manufactured.

240. FCA's conduct constitutes unfair acts or practices as defined by the California Consumer Legal Remedies Act. Cal. Civ. Code § 1770.

241. Plaintiff and the other Class members have suffered injury in fact and actual damages resulting from FCA's material omissions because they paid inflated purchase prices for the Class Vehicles. Plaintiff and the other Class members are

entitled to recover actual damages, punitive damages, costs and attorneys' fees, and all other relief that the Court deems proper under California Civil Code § 1780.

242.   In accordance with California Civil Code § 1782, Plaintiffs' counsel sent a certified letter to FCA on September 14, 2022 notifying FCA of its § 1770 violations. Pursuant to § 1782 of the Act, FCA is thereby on notice of its particular § 1770 violations and Plaintiffs' demands that (a) FCA rectify the problems associated with the actions detailed above and (b) FCA give notice to all affected consumers of FCA's intent to rectify said problems.

243.   Pursuant to California Civil Code § 1780(d), an affidavit showing that this action has been commenced in the proper forum is attached hereto as Exhibit S.

**COUNT VII**
**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT**
**FOR BREACH OF EXPRESS WARRANTY**
**Cal. Civ. Code §§ 1790 *et seq.***

244.   Plaintiff Creech ("Plaintiff," for purposes of the California Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

245.   Plaintiff brings this claim individually and on behalf of the California Class (the "Class," for purposes of this Count).

246.   Plaintiff and the other Class members are "buyers" within the meaning of California Civil Code § 1791.

247.   The Class Vehicles are "consumer goods" within the meaning of California Civil Code § 1791.

248.   FCA is a "manufacturer" of the Class Vehicles within the meaning of California Civil Code § 1791.

249.   Plaintiff and the other Class members bought or leased Class Vehicles manufactured by FCA.

250.   As described above, FCA made an express warranty to Plaintiff and the other Class members within in the meaning of California Civil Code §§ 1791.2 and 1793.2.

251.   The Class Vehicles share a common design and/or manufacturing defect in that they have the Water Intrusion Defect which caused the above-described leakage resulting in foul odors, mold, mildew, electrical failures and airbag damage.

252.   The Class Vehicles are covered by FCA's express warranty. The Water Intrusion Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiff and the other Class members.

253.   Plaintiff, individually and on behalf of the other Class members, notified FCA of the Water Intrusion Defect—and FCA's corresponding breach of warranty—through a notice letter dated September 14, 2022 and sent by United States Certified Mail to FCA through its counsel. FCA was also provided notice of the Water Intrusion Defect through numerous complaints filed against it directly and through its dealers as well as its own internal engineering knowledge.

254.    FCA has had the opportunity to cure the defect in the Class Vehicles, but it has chosen not to do so. Giving FCA a chance to cure the defect is not practicable in this case and would serve only to delay this litigation unnecessarily.

255.    As a result of FCA's breach of its express warranty, Plaintiff and the other Class members received goods with substantially impaired value. Plaintiff and the other Class members have been damaged by the diminished value of the Class Vehicles resulting from the Water Intrusion Defect.

256.    Pursuant to California Civil Code §§ 1793.2 and 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Class Vehicles or the overpayment or diminution in value of their Class Vehicles.

257.    Pursuant to California Civil Code § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

## COUNT VIII
## VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
## FOR BREACH OF IMPLIED WARRANTY
### Cal. Civ. Code §§ 1790 *et seq.*

258.    Plaintiff Creech ("Plaintiff," for purposes of the California Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

259.    Plaintiff brings this claim individually and on behalf of the California Class (the "Class," for purposes of this Count).

260.   Plaintiff and the other Class members who purchased their Class Vehicles in California are "buyers" within the meaning of California Civil Code § 1791.

261.   The Class Vehicles are "consumer goods" within the meaning of California Civil Code § 1791.

262.   FCA is a "manufacturer" of the Class Vehicles within the meaning of California Civil Code § 1791.

263.   FCA impliedly warranted to Plaintiff and the other Class members that the Class Vehicles were "merchantable" within the meaning of California Civil Code §§ 1791.1(a) and 1792.

264.   California Civil Code § 1791.1(a) states, "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following requirements: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmations of fact made on the container or label.

265.   The Class Vehicles would not pass without objection in the automotive trade because they share a common design and/or manufacturing defect, the Water Intrusion Defect, which causes foul odors, mold, mildew, electrical failures and airbag damage.

266. Because of the Water Intrusion Defect, the Class Vehicles are not fit for their ordinary purposes.

267. The Class Vehicles were not adequately labeled because the labeling failed to disclose the defects described herein.

268. Plaintiff, individually and on behalf of the other Class members, notified FCA of the Water Intrusion Defect—and FCA's corresponding breach of warranty—through a notice letter dated September 14, 2022 and sent by United States Certified Mail to FCA through its counsel. FCA was also provided notice of the Water Intrusion Defect through numerous complaints filed against it directly and through its dealers as well as its own internal engineering knowledge.

269. FCA has had the opportunity to cure the defect in the Class Vehicles, but it has chosen not to do so. Giving FCA a chance to cure the defect is not practicable in this case and would serve only to delay this litigation unnecessarily.

270. As a result of FCA's breach of its implied warranty, Plaintiff and the other Class members received goods with substantially impaired value. Plaintiff and the other Class members have been damaged as a result of the diminished value of the Class Vehicles.

271. Under California Civil Code §§ 1791.1(d) and 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief

including, at their election, the purchase price of their Class Vehicles or the overpayment or diminution in value of their Class Vehicles.

272. Under California Civil Code § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

## COUNT IX
## FRAUDULENT OMISSION

273. Plaintiff Creech ("Plaintiff," for purposes of the California Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

274. Plaintiff brings this claim individually and on behalf of the California Class (the "Class," for purposes of this Count).

275. FCA was aware of the true nature of the Class Vehicles as well as the Water Intrusion Defect when it marketed and sold the Class Vehicles to Plaintiff and the other Class members.

276. Having been aware of the true nature of the Class Vehicles as well as the Water Intrusion Defect—and having known that Plaintiff and the other Class members could not have reasonably been expected to know this information—FCA had a duty to disclose the defect to Plaintiff and the other Class Members in connection with the sale or lease of the Class Vehicles.

277. FCA did not disclose the true nature of the Class Vehicles as well as the Water Intrusion Defect to Plaintiff and the other Class members in connection with the sale or lease of the Class Vehicles.

278.   For reasons set forth above, the Water Intrusion Defect concerns material information with respect to the sale or lease of the Class Vehicles.

279.   In purchasing the Class Vehicles, Plaintiff and other Class members reasonably relied on FCA to disclose known material defects with respect to the Class Vehicles.

280.   Had Plaintiff and the other Class members known of the true nature of the Class Vehicles as well as the Water Intrusion Defect, they would not have purchased the Class Vehicles or would have paid less for the Class Vehicles.

281.   Through its omissions regarding the true nature of the Class Vehicles as well as the Water Intrusion Defect, FCA intended to induce—and did induce—Plaintiff and the other Class members either to purchase a Class Vehicle that they otherwise would not have purchased or to pay more for a Class Vehicle than they otherwise would have paid.

282.   As a direct and proximate result of FCA's omissions, Plaintiff and the other Class members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if FCA had disclosed the true nature of the Class Vehicles as well as the Water Intrusion Defect to them. Plaintiff and the other Class members have therefore incurred damages in an amount to be determined at trial.

## COUNT X
## UNJUST ENRICHMENT

283.   Plaintiff Creech ("Plaintiff," for purposes of the California Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

284.   Plaintiff brings this claim individually and on behalf of the California Class (the "Class," for purposes of this Count).

285.   FCA has benefited from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to FCA's concealment of the true nature of the Class Vehicles as well as the Water Intrusion Defect, and Plaintiff and the other Class members have overpaid for these vehicles.

286.   FCA has received and retained unjust benefits from Plaintiff and the other Class members, and inequity has resulted.

287.   It is inequitable and unconscionable for FCA to retain these benefits.

288.   Because FCA concealed its fraud and deception, Plaintiff and the other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

289.   FCA knowingly accepted the unjust benefits of its misconduct.

290.   As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other Class members in an amount to be determined at trial.

## COUNT XI
## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW
### Cal. Bus. & Prof. Code §§ 17200 *et seq.*

291.   Plaintiff Creech ("Plaintiff," for purposes of the California Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

292.   Plaintiff brings this claim individually and on behalf of the California Class (the "Class," for purposes of this Count).

293.   California Business and Professions Code § 17200 prohibits "unlawful, unfair, or fraudulent business acts or practices."

294.   FCA's conduct violated several statutes and the common law as alleged herein.

295.   FCA has violated § 17200 by knowingly selling Class Vehicles that include the Water Intrusion Defect and omitting disclosure of this defect to consumers.

296.   FCA's conduct was unscrupulous, offended established public policy, and was fraudulent.

297.   The harm caused by FCA's conduct greatly outweighs any benefit to consumers.

298.   Plaintiff and the other Class members relied on the omissions of FCA with respect to the quality and reliability of the Class Vehicles. Plaintiff and the other

Class members would not have purchased or leased their Class Vehicles and/or would not have paid as much for them but for FCA's omissions.

299.   FCA concealed and failed to disclose material information about the Class Vehicles in a manner that is likely to—and did—deceive consumers and the public.

300.   All of the misconduct alleged herein occurred in the conduct of FCA's business.

301.   Plaintiff, individually and on behalf of the other Class members, requests that this Court restore to Plaintiff and the other Class members any money acquired by FCA's unfair competition, including restitution and/or restitutionary disgorgement.

**D.   Claims Brought on Behalf of the Georgia Class**

**COUNT XII**
**VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES ACT**
**Ga. Code §§ 10-1-390 *et seq.***

302.   Plaintiff Jones ("Plaintiff," for purposes of the Georgia Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

303.   Plaintiff brings this claim individually and on behalf of the Georgia Class (the "Class," for purposes of this Count).

304.   The Georgia Fair Business Practices Act states, "Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful." Ga. Code § 10-1-393.

305.   By the conduct described in detail above and incorporated herein, FCA engaged in unfair and deceptive trade practices.

306.   FCA's omissions regarding the true nature of the Class Vehicles as well as the Water Intrusion Defect, as described above, are omissions of material facts that a reasonable person would have considered in deciding whether to purchase or pay the same price for the Class Vehicles.

307.   FCA intended for Plaintiff and the other Class members to rely on FCA's omissions regarding the true nature of the Class Vehicles as well as the Water Intrusion Defect.

308.   Plaintiff and the other Class members justifiably acted or relied to their detriment on FCA's omissions of fact concerning the true nature of the Class Vehicles as well as the above-described Water Intrusion Defect, as evidenced by Plaintiff and the other Class members' purchases of the Class Vehicles.

309.   Had FCA disclosed all material information regarding the true nature of the Class Vehicles as well as the Water Intrusion Defect, Plaintiff and the other Class members would not have purchased or leased the Class Vehicles or would have paid less to do so.

310.   FCA's omissions have deceived Plaintiff and have deceived or are likely to deceive other Class members and members of the consuming public.

311.   In addition to being deceptive, FCA's business practices were unfair because FCA knowingly sold Plaintiff and the other Class members Class Vehicles with the Water Intrusion Defect that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to competition under all of the circumstances. Moreover, in light of FCA's exclusive knowledge of the true nature of the Class Vehicles as well as the Water Intrusion Defect, the injury is not one that Plaintiff or the other Class members could have reasonably avoided.

312.   As a direct and proximate result of FCA's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members who purchased or leased the Class Vehicles would not have purchased or leased the Class Vehicles or would have paid less for them had the truth about the true nature of the Class Vehicles as well as the Water Intrusion Defect been disclosed. Plaintiff and the other Class members also suffered diminished value of their vehicles. Plaintiff and the other Class members are entitled to recover actual damages, attorneys' fees and costs, and all other relief allowed under Georgia Statutes § 10-1-399.

## COUNT XIII
## BREACH OF EXPRESS WARRANTY
### Ga. Code §§ 11-2-313 and 11-2A-210

313.   Plaintiff Jones ("Plaintiff," for purposes of the Georgia Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

314.   Plaintiff brings this claim individually and on behalf of the Georgia Class (the "Class," for purposes of this Count).

315.   FCA is and was at all relevant times a "merchant" with respect to the Class Vehicles within the meaning of Georgia Code § 11-2-104(1).

316.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Georgia Code §§ 11-2-105(1) and 11-2A-103(1)(h).

317.   FCA expressly warranted in its 2016 Basic Limited Warranty that it would "cover[] the cost of all parts and labor needed to repair any item on [the] vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation."

318.   FCA's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles with the Water Intrusion Defect.

319.   FCA breached the express warranty by failing to timely and adequately repair the Water Intrusion Defect.

320.   Further, to the extent that the Limited Warranty is construed to be limited to vehicle defects related to materials or workmanship, FCA has breached the Limited Warranty.

321.   The Water Intrusion Defect is a uniform defect that is related to materials.

322.   Specifically, the seals in the Class Vehicles are materials and they could suffer from inordinate wear or degradation.

323.   FCA has not repaired, and has been unable to repair, the Water Intrusion Defect.

324.   Plaintiff, individually and on behalf of the other Class members, notified FCA of the Water Intrusion Defect—and FCA's corresponding breach of warranty—through a notice letter dated August 30, 2022 and sent by United States Certified Mail to FCA through its counsel. FCA was also provided notice of the Water Intrusion Defect through numerous complaints filed against it directly and through its dealers as well as its own internal engineering knowledge.

325.   The Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because FCA has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

326.    Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

327.    Additionally, as alleged in more detail herein, at the time that FCA warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and FCA improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

328.    Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to FCA's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

329.    As a direct and proximate result of FCA's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XIV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Ga. Code §§ 11-2-314 and 11-2A-212

330.   Plaintiff Jones ("Plaintiff," for purposes of the Georgia Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

331.   Plaintiff brings this claim individually and on behalf of the Georgia Class (the "Class," for purposes of this Count).

332.   FCA is and was at all relevant times a "merchant" with respect to the Class Vehicles within the meaning of Georgia Code § 11-2-104(1) and a "lessor" within the meaning of Georgia Code § 11-2A-103(1)(p).

333.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Georgia Code §§ 11-2-105(1) and 11-2A-103(1)(h).

334.   A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Georgia Code §§ 11-2-314 and 11-2A-212.

335.   The Class Vehicles are defective because of the Water Intrusion Defect, causing severe health and safety concerns.

336.   The Water Intrusion Defect existed at the time the Class Vehicles left control of FCA.

337.   Based upon these defects, FCA has failed to meet the expectations of a reasonable consumer. The Class Vehicles are unfit for their ordinary, intended use,

and do not pass without objection in the trade because they suffer from the Water Intrusion Defect, which causes foul odors, mold, mildew, electrical failures and airbag damage.

338.   Plaintiff, individually and on behalf of the other Class members, notified FCA of the Water Intrusion Defect—and FCA's corresponding breach of warranty—through a notice letter dated August 30, 2022 and sent by United States Certified Mail to FCA through its counsel. FCA was also provided notice of the Water Intrusion Defect through numerous complaints filed against it directly and through its dealers as well as its own internal engineering knowledge.

339.   Moreover, notice is futile because FCA has continually failed to provide adequate remedies to Plaintiff and the other Class members.

340.   Plaintiff and the other Class members suffered injuries due to the Water Intrusion Defect in the Class Vehicles and FCA's breach of the implied warranty of merchantability.

341.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XV
## FRAUDULENT OMISSION

342.   Plaintiff Jones ("Plaintiff," for purposes of the Georgia Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

343.   Plaintiff brings this claim individually and on behalf of the Georgia Class (the "Class," for purposes of this Count).

344.   FCA was aware of the true nature of the Class Vehicles as well as the Water Intrusion Defect when it marketed and sold the Class Vehicles to Plaintiff and the other Class members.

345.   Having been aware of the true nature of the Class Vehicles as well as the Water Intrusion Defect—and having known that Plaintiff and the other Class members could not have reasonably been expected to know this information—FCA had a duty to disclose the defect to Plaintiff and the other Class Members in connection with the sale or lease of the Class Vehicles.

346.   FCA did not disclose the true nature of the Class Vehicles as well as the Water Intrusion Defect to Plaintiff and the other Class members in connection with the sale or lease of the Class Vehicles.

347.   For reasons set forth above, the Water Intrusion Defect concerns material information with respect to the sale or lease of the Class Vehicles.

348.   In purchasing the Class Vehicles, Plaintiff and other Class members reasonably relied on FCA to disclose known material defects with respect to the Class Vehicles.

349.   Had Plaintiff and the other Class members known of the true nature of the Class Vehicles as well as the Water Intrusion Defect, they would not have purchased the Class Vehicles or would have paid less for the Class Vehicles.

350.   Through its omissions regarding the true nature of the Class Vehicles as well as the Water Intrusion Defect, FCA intended to induce—and did induce—Plaintiff and the other Class members either to purchase a Class Vehicle that they otherwise would not have purchased or to pay more for a Class Vehicle than they otherwise would have paid.

351.   As a direct and proximate result of FCA's omissions, Plaintiff and the other Class members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if FCA had disclosed the true nature of the Class Vehicles as well as the Water Intrusion Defect to them. Plaintiff and the other Class members have therefore incurred damages in an amount to be determined at trial.

## COUNT XVI
## UNJUST ENRICHMENT

352.   Plaintiff Jones ("Plaintiff," for purposes of the Georgia Class's claims) incorporates by reference paragraphs 1-161 as if fully set forth herein.

353.   Plaintiff brings this claim individually and on behalf of the Georgia Class (the "Class," for purposes of this Count).

354.   FCA has benefited from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to FCA's concealment of the

true nature of the Class Vehicles as well as the Water Intrusion Defect, and Plaintiff and the other Class members have overpaid for these vehicles.

355. FCA has received and retained unjust benefits from Plaintiff and the other Class members, and inequity has resulted.

356. It is inequitable and unconscionable for FCA to retain these benefits.

357. Because FCA concealed its fraud and deception, Plaintiff and the other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

358. FCA knowingly accepted the unjust benefits of its misconduct.

359. As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other Class members in an amount to be determined at trial.

## E. Claims Brought on Behalf of the Texas Class

### COUNT XVII
### VIOLATION OF TEXAS DECEPTIVE TRADE PRACTICES – CONSUMER PROTECTION ACT
### Tex. Bus. & Com. Code §§ 17.01 *et seq.*

360. Plaintiff McFarland ("Plaintiff," for purposes of the Texas Class's claims) incorporates by reference paragraphs 1-160 as if fully set forth herein.

361. Plaintiff brings this claim individually and on behalf of the Texas Class (the "Class," for purposes of this Count).

362.   The Texas Deceptive Trade Practices – Consumer Protection Act (the "Texas Act") states that it is unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade of commerce." Tex. Bus. & Com. Code § 17.46.

363.   By the conduct described in detail above and incorporated herein, FCA engaged in false, misleading, and deceptive trade practices.

364.   Plaintiff, individually and on behalf of the other Class members, notified FCA of the Water Intrusion Defect—and FCA's corresponding breach of warranty—through a notice letter dated September 28, 2022 and sent by United States Certified Mail to FCA through its counsel. FCA was also provided notice of the Water Intrusion Defect through numerous complaints filed against it directly and through its dealers as well as its own internal engineering knowledge.

365.   FCA's omissions regarding the true nature of the Class Vehicle as well as the Water Intrusion Defect are omissions of material facts that a reasonable person would have considered in deciding whether to purchase or pay the same price for the Class Vehicles.

366.   FCA intended for Plaintiff and the other Class members to rely on FCA's omissions regarding the true nature of the Class Vehicle as well as the Water Intrusion Defect.

367.   Plaintiff and the other Class members justifiably acted or relied to their detriment on FCA's omissions of fact concerning the true nature of the Class Vehicle as well as the Water Intrusion Defect, as evidenced by Plaintiff and the other Class members' purchases of the Class Vehicles.

368.   Had FCA disclosed all material information regarding the true nature of the Class Vehicle as well as the Water Intrusion Defect, Plaintiff and the other Class members would not have purchased or leased the Class Vehicles or would have paid less to do so.

369.   FCA's omissions have deceived Plaintiff and have deceived or are likely to deceive other Class members and members of the consuming public.

370.   In addition to being deceptive, the business practices of FCA were unfair because FCA knowingly sold to Plaintiff and the other Class members defective vehicles that are essentially unusable for the purposes for which they were sold. The injuries to Plaintiff and the other Class members are substantial and greatly outweigh any alleged countervailing benefit to Plaintiff and the other Class members or to any competition under all of the circumstances. Moreover, in light of FCA's exclusive knowledge of the true nature of the Class Vehicle as well as the Water Intrusion Defect, the injury is not one that Plaintiff could have reasonably avoided.

371.   As a direct and proximate result of FCA's unfair and deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable.

## COUNT XVIII
## BREACH OF EXPRESS WARRANTY
### Tex. Bus. & Com. Code §§ 2.313 and 2A.210

372. Plaintiff McFarland ("Plaintiff," for purposes of the Texas Class's claims) incorporates by reference paragraphs 1-160 as if fully set forth herein.

373. Plaintiff brings this claim individually and on behalf of the Texas Class (the "Class," for purposes of this Count).

374. FCA is and was at all relevant times a "merchant" with respect to the Class Vehicles within the meaning of Texas Business and Commerce Code § 2.104(a).

375. The Class Vehicles are and were at all relevant times "goods" within the meaning of Texas Business and Commerce Code §§ 2.105(a) and 2A.103(a)(8).

376. FCA expressly warranted in its 2016 Basic Limited Warranty that it would "cover[] the cost of all parts and labor needed to repair any item on [the] vehicle when it left the manufacturing plant that is defective in material, workmanship or factory preparation."

377. FCA's Limited Warranty formed the basis of the bargain that was reached when Plaintiff and the other Class members purchased or leased their Class Vehicles with the Water Intrusion Defect.

378. FCA breached the express warranty by failing to timely and adequately repair the Water Intrusion Defect.

379. Further, to the extent that the Limited Warranty is construed to be limited to vehicle defects related to materials or workmanship, FCA has breached the Limited Warranty.

380. The Water Intrusion Defect is a uniform defect that is related to materials.

381. Specifically, the seals in the Class Vehicles are materials and they could suffer from inordinate wear or degradation.

382. FCA has not repaired, and has been unable to repair, the Water Intrusion Defect.

383. Plaintiff, individually and on behalf of the other Class members, notified FCA of the Water Intrusion Defect—and FCA's corresponding breach of warranty—through a notice letter dated September 28, 2022 and sent by United States Certified Mail to FCA through its counsel. FCA was also provided notice of the Water Intrusion Defect through numerous complaints filed against it directly and through its dealers as well as its own internal engineering knowledge.

384. The Limited Warranty fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other Class members whole and because FCA has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

385.   Accordingly, recovery by Plaintiff and the other Class members is not limited to the limited warranty of repair to parts defective in materials and workmanship, and Plaintiff, individually and on behalf of the other Class members, seek all remedies as allowed by law.

386.   Additionally, as alleged in more detail herein, at the time that FCA warranted and sold the Class Vehicles it knew that the Class Vehicles did not conform to the warranty and were inherently defective, and FCA improperly concealed material facts regarding its Class Vehicles. Plaintiff and the other Class members were, therefore, induced to purchase or lease the Class Vehicles under false pretenses.

387.   Moreover, much of the damage flowing from the Class Vehicles cannot be resolved through the limited remedy of repairs, as those incidental and consequential damages have already been suffered due to FCA's improper conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

388.   As a direct and proximate result of FCA's breach of express warranty, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XIX
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### Tex. Bus. & Com. Code §§ 2.314 and 2A.212

389.   Plaintiff McFarland ("Plaintiff," for purposes of the Texas Class's claims) incorporates by reference paragraphs 1-160 as if fully set forth herein.

390.   Plaintiff brings this claim individually and on behalf of the Texas Class (the "Class," for purposes of this Count).

391.   FCA is and was at all relevant times a "merchant" with respect to the Class Vehicles within the meaning of Texas Business and Commerce Code § 2.104(a) and a "lessor" within the meaning of Texas Business and Commerce Code § 2A.103(a)(16).

392.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Texas Business and Commerce Code §§ 2.105(a) and 2A.103(a)(8).

393.   Pursuant to Texas Business and Commerce Code §§ 2.314 and 2A.212, a warranty that the Class Vehicles were in merchantable condition was implied by law, and the Class Vehicles were bought and sold subject to an implied warranty of merchantability.

394.   The Class Vehicles did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which vehicles are used.

Specifically, the Class Vehicles suffer from the Water Intrusion Defect, which causes foul odors, mold, mildew, electrical failures and airbag damage.

395.   Plaintiff, individually and on behalf of the other Class members, notified FCA of the Water Intrusion Defect—and FCA's corresponding breach of warranty—through a notice letter dated September 28, 2022 and sent by United States Certified Mail to FCA through its counsel. FCA was also provided notice of the Water Intrusion Defect through numerous complaints filed against it directly and through its dealers as well as its own internal engineering knowledge.

396.   Plaintiff and the other Class members suffered injuries due to the defective condition of the Class Vehicles and FCA's breach of the implied warranty of merchantability.

397.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be determined at trial.

## COUNT XX
## FRAUDULENT OMISSION

398.   Plaintiff McFarland ("Plaintiff," for purposes of the Texas Class's claims) incorporates by reference paragraphs 1-160 as if fully set forth herein.

399.   Plaintiff brings this claim individually and on behalf of the Texas Class (the "Class," for purposes of this Count).

400.    FCA was aware of the true nature of the Class Vehicle as well as the Water Intrusion Defect when it marketed and sold the Class Vehicles to Plaintiff and the other Class members.

401.    Having been aware of the true nature of the Class Vehicle as well as the Water Intrusion Defect—and having known that Plaintiff and the other Class members could not have reasonably been expected to know this information—FCA had a duty to disclose the defect to Plaintiff and the other Class Members in connection with the sale or lease of the Class Vehicles.

402.    FCA did not disclose the true nature of the Class Vehicle as well as the Water Intrusion Defect to Plaintiff and the other Class members in connection with the sale or lease of the Class Vehicles.

403.    For reasons set forth above, the Water Intrusion Defect concerns material information with respect to the sale or lease of the Class Vehicles.

404.    In purchasing the Class Vehicles, Plaintiff and other Class members reasonably relied on FCA to disclose known material defects with respect to the Class Vehicles.

405.    Had Plaintiff and the other Class members known of the true nature of the Class Vehicle as well as the Water Intrusion Defect, they would not have purchased the Class Vehicles or would have paid less for the Class Vehicles.

406.   Through its omissions regarding the true nature of the Class Vehicle as well as the Water Intrusion Defect, FCA intended to induce—and did induce—Plaintiff and the other Class members either to purchase a Class Vehicle that they otherwise would not have purchased or to pay more for a Class Vehicle than they otherwise would have paid.

407.   As a direct and proximate result of FCA's omissions, Plaintiff and the other Class members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if FCA had disclosed the true nature of the Class Vehicle as well as the Water Intrusion Defect to them. Plaintiff and the other Class members have therefore incurred damages in an amount to be determined at trial.

## COUNT XXI
## UNJUST ENRICHMENT

408.   Plaintiff McFarland ("Plaintiff," for purposes of the Texas Class's claims) incorporates by reference paragraphs 1-160 as if fully set forth herein.

409.   Plaintiff brings this claim individually and on behalf of the Texas Class (the "Class," for purposes of this Count).

410.   FCA has benefited from selling and leasing at an unjust profit defective Class Vehicles that had artificially inflated prices due to FCA's concealment of the true nature of the Class Vehicle as well as the Water Intrusion Defect, and Plaintiff and the other Class members have overpaid for these vehicles.

411.   FCA has received and retained unjust benefits from Plaintiff and the other Class members, and inequity has resulted.

412.   It is inequitable and unconscionable for FCA to retain these benefits.

413.   Because FCA concealed its fraud and deception, Plaintiff and the other Class members were not aware of the true facts concerning the Class Vehicles and did not benefit from FCA's misconduct.

414.   FCA knowingly accepted the unjust benefits of its misconduct.

415.   As a result of FCA's misconduct, the amount of its unjust enrichment should be disgorged and returned to Plaintiff and the other Class members in an amount to be determined at trial.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the other Class members, respectfully request that the Court enter judgment in their favor and against FCA, as follows:

A.   Certification of the proposed Nationwide and State Classes, including appointment of the named Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

B.   Restitution, including, at the election of Class members, recovery of the purchase price of their Class Vehicles, or the overpayment or diminution in value of their vehicles;

C.     Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial, except that monetary relief under certain consumer protection statutes, as stated above, shall be limited prior to completion of the applicable notice requirements;

D.     An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

E.     An award of costs and attorneys' fees; and

F.     Such other or further relief as may be appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: September 29, 2022        Respectfully submitted,

_/s/ E. Powell Miller_
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Telephone: 248-841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com

W. Daniel "Dee" Miles, III
H. Clay Barnett, III
J. Mitch Williams
Dylan T. Martin
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**

272 Commerce Street
Montgomery, Alabama 36104
Telephone: 334-269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@beasleyallen.com
Mitch.Williams@Beasleyallen.com
Dylan.Martin@BeasleyAllen.com

Adam J. Levitt
John E. Tangren
Daniel R. Ferri
**DICELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: 312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

***Counsel for Plaintiff and the Proposed
Classes***

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify, that on September 29, 2022 I electronically filed the foregoing with the Clerk of the Court using the ECF system which will notify all counsel of record authorized to receive such filings.

**THE MILLER LAW FIRM, P.C.**

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Tel: (248) 841-2200
epm@millerlawpc.com