## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| EFFIE JOHNSON NORMAN, TREVOR CREECH, DEZ JONES, and EDWIN MCFARLAND, individually and on behalf of all others similarly situated, | Case No.: 2:22-cv-11393-TGB-CI |
| | Hon. Terrence G. Berg |
| Plaintiffs, | Magistrate Judge Curtis Ivy, Jr. |
| v. | |
| FCA US LLC, | |
| Defendant. | |

### PLAINTIFFS' OPPOSITION TO DEFENDANT FCA US LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT UNDER RULE 12(b)(6)

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS...................................................................... ii

TABLE OF AUTHORITIES ................................................................. iv

COUNTER-STATEMENT OF ISSUES PRESENTED ...........................................x

TABLE OF MOST APPROPRIATE AUTHORITIES........................................... xii

I.        INTRODUCTION.................................................................1

II.       STATEMENT OF FACTS.........................................................1

III.      LEGAL STANDARD .............................................................4

IV.       ARGUMENT ......................................................................4

    A.    Plaintiffs State Claims for Breach of Warranty Under the
        Magnuson-Moss Warranty Act and Applicable State Laws................4

        1.    Plaintiffs Allege a Defect in Materials and Workmanship.........5

        2.    FCA Breached Its Limited Warranty..........................................7

        3.    FCA Cannot Rely on the Limited Warranty's Limitation
              of the Implied Warranty of Merchantability Because of Its
              Own Fraudulent Concealment and Because the Limited
              Warranty Fails in Its Essential Purpose. ...................................10

        4.    Plaintiffs' Vehicles Are Not Merchantable. .............................12

        5.    Plaintiffs Norman and Jones Were Intended Third-Party
              Beneficiaries of FCA's Contracts with Dealers, and
              Plaintiff Jones Had Privity with FCA. .....................................13

    B.    Plaintiffs Adequately Plead Their Fraud-Based Claims ....................15

        1.    Plaintiffs' Omission-Based Fraud Claims Satisfy Rule
              9(b) ...........................................................................................15

2.    Plaintiffs Adequately Allege FCA's Pre-Sale Knowledge. ......17

3.    FCA's Additional State-Specific Arguments Lack Merit. .......18

    a.    State law class action bars do not prohibit Plaintiffs' Alabama and Georgia consumer protection claims........18

    b.    The ADTPA's "savings clause" does not prohibit Plaintiffs' claim. ...........................................................19

    c.    Plaintiffs' CLRA claim should be allowed to proceed...........................................................................20

    d.    Plaintiffs adequately allege their UCL claim. ................21

    e.    The economic loss doctrine does not prohibit Plaintiffs' California and Texas fraud claims.................22

C.   Plaintiffs Adequately Plead Unjust Enrichment. ................................23

D.   The Nationwide Claims Should Not Be Dismissed. ...........................25

CONCLUSION .......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Afzal v. BMW of N. Am., LLC*,
   2016 WL 6126913 (D.N.J. Oct. 17, 2016) .........................................................10

*Agricola Cuyuma SA v. Corona Seeds, Inc.*,
   2018 WL 6185969 (C.D. Cal. Aug. 27, 2018) ............................................ 14, 15

*Amin v. Mercedes-Benz USA, LLC*,
   301 F. Supp. 3d 1292 (N.D. Ga. 2018)......................................................... 16, 25

*Avitia v. Rodriguez*,
   2022 WL 4004796 (W.D. Tex. Jul 8, 2022)........................................................30

*Baird v. Samsung Elecs. Am., Inc*.,
   2018 WL 4191542 (N.D. Cal. 2018) (9th Cir. 2020) ........................................27

*Barcal v. MD Serono, Inc*.,
   2016 WL 1086028 (N.D. Ala. Mar. 21, 2016) ...................................................26

*Barnext Offshore Ltd. v. Ferretti Grp. USA, Inc.*,
   2011 WL 13223746 (S.D. Fla. May 16, 2011)....................................................12

*Bates Energy Oil & Gas v. Complete Oilfield Servs*.,
   361 F. Supp. 3d 633 (W.D. Tex. Jan. 14, 2019)................................................30

*Beck v. FCA US LLC*,
   273 F. Supp. 3d 735 (E.D. Mich. 2017)............................................... 17, 20, 22

*Bello v. Caterpillar, Inc.*,
   2018 WL 2214709 (S.D. Fla. Apr. 10, 2018) .....................................................12

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   973 P.2d 527 (1999)...........................................................................................29

*Chapman v. Gen. Motors LLC*,
   531 F. Supp. 3d 1257 (E.D. Mich. 2021)................................................ 13, 32, 34

*Cholakyan v. Mercedes-Benz USA, LLC*,
    796 F. Supp. 2d 1220 (C.D. Cal. 2011) ...............................................................16

*Click v. Gen. Motors LLC*,
    2020 WL 3118577 .......................................................................................................16

*Coba v. Ford Motor Co.*,
    932 F.3d 114 (3d Cir. 2019).........................................................................................6

*Crawford v. FCA US LLC*,
    2021 WL 3603342 (E.D. Mich. Aug. 13, 2021)....................................................31

*D'Arbrosio v. Marino*,
    747 F.3d 378 (6th Cir. 2014) .......................................................................................4

*Directv, Inc. v. Treesh*,
    487 F.3d 471 (6th Cir. 2007) .......................................................................................4

*Doyle v. Chrysler Grp. LLC*,
    2014 WL 1910628 (C.D. Cal. Jan. 29, 2014) .......................................................28

*Est. of Pilgrim v. Gen. Motors LLC*,
    2022 WL 989322 (E.D. Mich. Mar. 31, 2022) .....................................................34

*Evershine Prods., Inc. v. Schmitt*,
    202 S.E.2d 228 (Ga. App. Ct. 1973)......................................................................19

*Experian Info. Solutions, Inc., v. Lexington Allen, L.P.*,
    2011 WL 1627115 (E.D. Tex. Apr. 7, 2011)........................................................30

*Francis v. Gen. Motors, LLC*,
    504 F. Supp. 3d 659 (E.D. Mich. 2020)................................................ 25, 31, 33

*Freeman v. NIBCO, Inc.*,
    526 F. Supp. 3d 1112 (N.D. Ala. 2020)................................................................17

*Gavitt v. Brown*,
    835 F.3d 623 (6th Cir. 2016) .......................................................................................4

*Gregorio v. Ford Motor Co.*,
    2021 WL 778913 (E.D. Mich. Mar. 1, 2021) ........................................................8

*In re Chevrolet Bolt EV Battery Litig.* ("*Chevy Bolt*"),
    2022 WL 4686974 (E.D. Mich. Sept. 30, 2022).......................................... passim

*In re Duramax Diesel Litig.*,
    298 F. Supp. 3d 1037 (E.D. Mich. 2018).............................................................21

*In re FCA US LLC Monostable Elec. Gearshift Litig.* ("*FCA Monostable II*"),
    446 F. Supp. 3d 218 (E.D. Mich. 2020)........................................................ 31, 33

*In re FCA US LLC Monostable Electronic Gearshift Litig.* ("*FCA Monostable I*"),
    280 F. Supp. 3d 975 (E.D. Mich. 2017)........................................................ 33, 34

*In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.* ("*GM Air
    Conditioning*"),
    406 F. Supp. 3d 618 (E.D. Mich. 2019)........................................................ 23, 26

*In re Takata Airbag Prods. Liab. Litig.*,
    2020 WL 3286821 (S.D. Fla. May 29, 2020).....................................................30

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &
    Prod. Liab. Litig.*,
    754 F. Supp. 2d 1145 (C.D. Cal. 2010) ...................................................... 10, 29

*Johnson v. FCA US LLC*,
    555 F. Supp. 3d 488 (E.D. Mich. 2021)..............................................................34

*Jones v. Coty Inc.*,
    362 F. Supp. 3d 1182 (S.D. Ala. 2018) ..............................................................25

*Kanfer v. Pharmacare US, Inc.*,
    142 F. Supp. 3d 1091 (S.D. Cal. 2015)...............................................................27

*Keegan v. Am. Honda Motor Co. Inc.*,
    838 F. Supp. 2d 929 (C.D. Cal. 2012) ................................................................18

*Lee v. Mylan, Inc.*,
    806 F. Supp. 2d 1320 (M.D. Ga. 2011) ..............................................................19

*Lessin v. Ford Motor Co.*,
2021 WL 3810584 (S.D. Cal. Aug. 25, 2021) .....................................................15

*Lincoln Elec. Co. v. Technitrol, Inc.*,
2010 WL 2219341 (N.D. Ohio June 2, 2010) .............................................. 12, 15

*Lisk v. Lumber One Wood Preserving, LLC*,
792 F.3d 1331 (11th Cir. 2015) ...........................................................................25

*Lombard Corp. v. Quality Aluminum Prods. Co.*,
261 F.2d 336 (6th Cir. 1958) ..................................................................................6

*Matanky v. Gen. Motors LLC*,
370 F. Supp. 3d 772 (E.D. Mich. 2019)..............................................................20

*McCarthy v. Toyota Motor Corp.*,
2018 WL 6318841 (C.D. Cal. Sept. 14, 2018) ...............................................9, 10

*McDonald v. Mazda Motors of Am., Inc.*,
603 S.E.2d 456 (Ga. Ct. App. 2004)....................................................................16

*Milisits v. FCA US LLC*,
2021 WL 3145704 (E.D. Mich. July 26, 2021) .....................................................7

*Morris v. Walmart Inc.*,
2020 WL 470287 (N.D. Ala. Jan. 29, 2020).......................................................26

*Naef v. Masonite Corp.*,
923 F. Supp. 1504 (S.D. Ala. 1996) ....................................................................18

*Napoli-Bosse v. Gen. Motors LLC*,
453 F. Supp. 3d 536 (D. Conn. 2020)....................................................................9

*Persad v. Ford Motor Co.*,
2018 WL 3428690 (E.D. Mich. July 16, 2018) .....................................................8

*Phillips v. Hobby Lobby Stores, Inc.*,
2019 WL 8229168 (N.D. Ala. Sept. 30, 2019)....................................................25

*Raymo v. FCA US LLC,*
    475 F. Supp. 3d 680 (E.D. Mich. 2020) ...............................................32

*Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.,*
    683 F.3d 239 (6th Cir. 2012) .............................................................20

*Reynolds v. FCA US LLC,*
    546 F. Supp. 3d 635 (E.D. Mich. 2021) ....................................... 25, 29

*Rollolazo v. BMW of N. Am., LLC,*
    2017 WL 6888501 ...........................................................................11

*S.M. Wilson & Co. v. Smith Int'l, Inc.,*
    587 F.2d 1363 (9th Cir. 1978) .............................................................6

*Schechner v. Whirlpool Corp.,*
    237 F. Supp. 3d 601 (E.D. Mich. 2017) ...............................................32

*Scherer v. FCA US, LLC,*
    565 F. Supp. 3d 1184 (S.D. Cal. 2021) ................................................30

*Severstal N. Am., Inc. v. N. Am. Refractories Co.,*
    2009 WL 1620115 (E.D. Mich. June 9, 2009) ......................................8

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
    559 U.S. 393 (2010) ..........................................................................24

*Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.,*
    512 So.2d 99 (Ala. 1987) ...................................................................18

*Siemens Credit Corp. v. Marvik Colour, Inc.,*
    859 F. Supp. 686 (S.D.N.Y. 1994) .....................................................15

*Sloan v. Gen. Motors LLC,*
    287 F. Supp. 3d 840 (N.D. Cal. 2018) ................................................16

*Smith v. Gen. Motors LLC,*
    988 F.3d 873 (6th Cir. 2021) .............................................................23

*Solo v. United Parcel Serv. Co.*,
   819 F.3d 788 (6th Cir. 2016) ...............................................................32

*Tull Bros., Inc. v. Peerless Prods., Inc.*,
   953 F. Supp. 2d 1245 (S.D. Ala. 2013) ...............................................8

*Volkswagen Timing Chain Prod. Liab. Litig.*,
   2017 WL 1902160 (D.N.J. May 8, 2017) ............................................9

*Weidman v. Ford Motor Co.*,
   2019 WL 3003693 (E.D. Mich. July 10, 2019) ..................................23

*Weiss v. Gen. Motors, LLC*,
   418 F. Supp. 3d 1173 (S.D. Fla. 2019) ..............................................18

*Williams v. Duke Energy Int'l, Inc.*,
   681 F. 3d 788 (6th Cir. 2012) ............................................................21

*Yeager v. Ford Motor Co.*,
   2020 WL 95645 (N.D. Cal. Jan. 8, 2020) ..........................................14

**Other Authorities**
Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-9-1 ...............................24
Anderson U.C.C. § 2A-503:126 (3d. ed.) ...............................................................15
Cal. Bus. & Prof. Code § 17200 ...............................................................28
California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 .....................26
Georgia Fair Business Practices Act, Ga. Code §§ 10-1-390 .......................... 19, 24

**Rules**
Fed. R. Civ. P. 12(b)(6)...........................................................................................4
Fed. R. Civ. P. 23 ............................................................................... 18, 19
Fed. R. Civ. P. 8(a)(3)...........................................................................................24
Fed. R. Civ. P. 8(d)(3)...........................................................................................19
Fed. R. Civ. P. 9(b) ...................................................................... 15, 16, 17

## **COUNTER-STATEMENT OF ISSUES PRESENTED**

1. Have Plaintiffs sufficiently pled claims under the Magnuson-Moss Warranty Act where their state law warranty claims are also viable?

   Plaintiffs' answer: Yes.

2. Have Plaintiffs sufficiently pled claims for breach of express warranty where they allege a defect in materials or workmanship that FCA has failed to repair?

   Plaintiffs' answer: Yes.

3. Have Plaintiffs sufficiently pled claims for breach of implied warranty where they allege their vehicles have a defect that leads to electrical system failure from the point of sale, the warranty has failed in its essential purpose, and that Plaintiffs Norman and Jones were intended third-party beneficiaries?

   Plaintiffs' answer: Yes.

4. Have Plaintiffs satisfied Rule 9(b) by alleging FCA's omission of the alleged defect and its pre-sale knowledge of the defect through complaints, dealership data, internal testing, and its issuance of Technical Service Bulletins?

   Plaintiffs' answer: Yes.

5. Does Rule 23 take precedence over the procedural class action bars in the Georgia Fair Business Practices Act ("GFBPA") and Alabama Deceptive Trade Practices Act ("ADTPA")?

   Plaintiffs' answer: Yes.

6. Does the ADTPA permit a plaintiff to plead both a common law claim and an ADTPA claim?

   Plaintiffs' answer: Yes.

7. Did Plaintiffs provide sufficient notice under California's Consumer Legal Remedies Act ("CLRA") where they notified FCA more than thirty days from now and FCA has not indicated it will correct the Defect?

Plaintiffs' answer: Yes.

8.  Have Plaintiffs sufficiently pled claims under the "unfair" and "unlawful" prongs of Cal. Bus. & Prof. Code § 17200 where they allege violations of warranty laws and the CLRA?

    Plaintiffs' answer: Yes.

9.  Is the economic loss rule inapplicable to Plaintiffs' claims under California and Texas law for fraud by omission?

    Plaintiffs' answer: Yes.

10. Are Plaintiffs' unjust enrichment claims properly pled in the alternative and supported by Plaintiffs' allegations that their overpayment conferred a direct benefit on FCA?

    Plaintiffs' answer: Yes.

11. Do Plaintiffs have standing to bring claims on behalf of a nationwide class?

    Plaintiffs' answer: Yes.

## TABLE OF MOST APPROPRIATE AUTHORITIES

*Chapman v. General Motors LLC*,
 531 F. Supp. 3d 1257 (E.D. Mich. 2021)

*Francis v. General Motors*,
 504 F. Supp. 3d 659 (E.D. Mich. 2020)

*In re Chevrolet Bolt EV Battery Litig.*,
 2022 WL 4686974 (E.D. Mich. Sept. 30, 2022)

*In re FCA US LLC Monostable Electronic Gearshift Litig.*,
 280 F. Supp. 3d 975 (E.D. Mich. 2017)

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
 446 F. Supp. 3d 218 (E.D. Mich. 2020)

*In re Gen. Motors Air Conditioning Mktg. & Sales Practices Litig.*,
 406 F. Supp. 3d 618 (E.D. Mich. 2019)

*Matanky v. General Motors LLC*,
 370 F. Supp. 3d 772 (E.D. Mich. 2019)

*Reynolds v. FCA US LLC*,
 546 F. Supp. 635 (E.D. Mich. 2021)

*Weidman v. Ford Motor Co.*,
 2019 WL 3003693 (E.D. Mich. July 10, 2019)

# I.   INTRODUCTION

Plaintiffs allege all 2016-2022 model year RAM 1500 vehicles suffer from a uniform defect which allows moisture to enter the cabin causing mold/mildew, foul odors, electrical system disruption, and rear cabin airbag contamination (the "Defect" or "Water Intrusion Defect," as defined below). *See* First Amended Complaint ("FAC"), ECF No. 14, ¶ 1. Defendant FCA US LLC ("Defendant" or "FCA") knew about the Water Intrusion Defect, its effect on vehicle reliability, and the associated risks to occupants' health and safety, but did not disclose it to Plaintiffs and the other Class members prior to marketing, selling, and leasing the Class Vehicles to them. *Id.* ¶¶ 1, 8-15, 95-126. Moreover, FCA has not recalled the Class Vehicles for this failure or manufactured improved replacement parts to remedy the Water Intrusion Defect, thus placing Plaintiffs and Class members at an ongoing elevated risk for accident, injury, or death. *Id.* ¶¶ 10, 11, 60. FCA, at all relevant times, concealed the Water Intrusion Defect and has not offered an adequate remedy. *Id.* ¶¶ 1, 8-15, 49-76, 126, 137. Plaintiffs' claims are properly pled, and FCA's Motion to Dismiss (the "Motion") (ECF No. 16) should be denied.

# II.   STATEMENT OF FACTS

All Class Vehicles are equipped with substantially similar rear cabin windows, roofline third brake lights, and roof-mounted auxiliary antenna, which are affixed to the cab exterior and require proper environmental weatherstripping and

sealing to prevent water and moisture from leaking into the vehicles' cabin. *Id.* ¶¶ 2, 3, 49. FCA failed to adequately design and/or manufacture these components and their related seals, allowing water and moisture to penetrate the seals and damage the cabin and critical electronic components. *Id.* ¶¶ 50-51, 73-76. Further, FCA failed to adequately design and/or manufacture the Class Vehicles with a sufficiently robust and durable structural design so that the bodies, frames, or chassis do not twist or flex causing plastic or glass components to crack or break, and thus allowing water and moisture to enter the vehicles' cabin. *Id.*

Water intrusion is a serious safety defect that causes mold, mildew, and foul odors to permeate the vehicles' cabin, putting occupants at risk of respiratory health issues, as well as affecting the vehicles' BCM or other electrical connection(s) responsible for controlling many of the Class Vehicles' systems such as the push-to-start ignition system, locks, windows, headlights, taillights, interior lights, windshield wipers, climate control, infotainment system and navigation, and back up camera, among other things. *Id.* ¶¶ 77-80. Failure of these systems are not only distracting to the driver, but causes vehicle start-up failure, headlight and taillight failure (a violation of traffic ordinances and NHTSA regulations), turn signal and brake light failure, windshield wiper failure, and door lock failure, among other malfunctions. *Id.* ¶ 81. Additionally, the Water Intrusion Defect affects the integrity and operability of the rear-cabin airbags and contaminates and fouls its propellant,

thereby causing the same condition present in recalled Takata airbags. *Id.* ¶ 82. FCA has long known of the Water Intrusion Defect and its serious risks to consumer safety but failed to disclose the Defect prior to the sale or lease of Class Vehicles to Plaintiff and the other Class members.

FCA gained pre-sale knowledge of the Water Intrusion Defect through pre-release evaluation and testing data, numerous consumer complaints made directly to FCA, NHTSA, and/or posted on public online vehicle owner forums, FCA's own investigations, FCA's TSBs, repair and replacement part sales data, aggregate data from authorized-FCA dealerships, and its own internal records. *Id.* ¶¶ 8, 95. Specifically, FCA knew about the Water Intrusion Defect through pre-release Failure Modes and Effects Analyses ("FMEA") and frame/cabin twisting tests. *Id.* ¶¶ 95-100. Further, FCA knew in 2016 when the first NHTSA complaint was filed, that the Class Vehicles were suffering from symptoms of the Water Intrusion Defect during normal operation and when not in use. *Id.* ¶¶ 95-126. Ultimately, FCA issued TSBs on February 15, 2021, April 15, 2021, and April 22, 2021, acknowledging the Water Intrusion Defect in the Class Vehicles. *Id.* ¶¶ 52-60. Despite its knowledge, FCA replaced Class Vehicles' defective parts with new defective units, thereby doing nothing to cure the Water Intrusion Defect. *Id.* ¶¶ 22, 30, 36, 42-43, 52-68, 126, 150. For example, Plaintiffs Johnson, Creech, Jones, and MacFarland experienced failure of both the factory installed and replacement parts. *Id.* ¶¶ 22, 30,

36, 42-43, 61-68.

### III.    LEGAL STANDARD

Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is not proper unless the defendant meets its burden to show the plaintiff fails to state a claim upon which relief can be granted. *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). If the complaint contains "either direct or inferential allegations respecting all material elements," it should not be dismissed. *D'Arbrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). The "complaint is viewed in the light most favorable to [the plaintiff]; the allegations in the complaint must be accepted as true, and all reasonable inferences are drawn in [the plaintiff's] favor." *Gavitt v. Brown*, 835 F.3d 623, 639-40 (6th Cir. 2016); *see also In re Chevrolet Bolt EV Battery Litig.* ("*Chevy Bolt*"), 2022 WL 4686974, at *14 (E.D. Mich. Sept. 30, 2022).

### IV.    ARGUMENT

**A.    Plaintiffs State Claims for Breach of Warranty Under the Magnuson-Moss Warranty Act and Applicable State Laws.**

FCA argues that Plaintiffs' MMWA claim must fail because their state law warranty claims are not properly pled. However, for the reasons discussed below, FCA is mistaken; all warranty claims in the FAC are properly pled. Accordingly, since MMWA claims "stand or fall" with state law warranty claims, Plaintiffs have a valid MMWA claim as well. *See Chevy Bolt*, 2022 WL 4686974, at *38.

4

#### 1.     Plaintiffs Allege a Defect in Materials and Workmanship.

FCA argues that if a defect is related to a design choice, it must fall outside the scope of the Limited Warranty as a matter of law. *See* ECF No. 16, PageID.1156-1157. However, Plaintiffs allege that the Water Intrusion Defect is a defect in materials or workmanship, *see, e.g.*, FAC ¶¶ 201–02, 321–22, 380–81, which places the Defect squarely within the warranty's coverage of defects "in material, workmanship or factory preparation," *id.* ¶ 139. A defect in "materials" refers to "a defect in quality," and a defect in "workmanship" refers to "a defect in the way some part of the machine is constructed." *S.M. Wilson & Co. v. Smith Int'l, Inc.*, 587 F.2d 1363, 1372 (9th Cir. 1978) (quoting *Lombard Corp. v. Quality Aluminum Prods. Co.*, 261 F.2d 336, 338 (6th Cir. 1958)); *see also Coba v. Ford Motor Co.*, 932 F.3d 114, 121 (3d Cir. 2019) ("[A] 'materials' defect is a failing in the quality of the actual substances used to make a product . . . a 'workmanship' defect is a deficiency in the execution of a product's assembly or construction. . . ."). Courts distinguish these sorts of defects from "design" defects, which refer to "shortcomings that arise in the plans for a product's creation." *Coba*, 932 F.3d at 121.

Accepting the FAC's allegations as true, there is no question that Plaintiffs' vehicles suffer from a defect—they all experienced varying electrical problems and/or mold buildup which made them more difficult and unsafe to operate. FAC ¶¶ 1–7, 22, 30, 36, 42–43. The issue is whether it is plausible that the cause of the Water

5

Intrusion Defect lies in Plaintiffs' vehicles' materials or workmanship as opposed to their design. Since it is highly unlikely that Plaintiffs' vehicles were designed to retain water so badly that crucial electrical systems fail,[1] it is certainly plausible that the Water Intrusion Defect lies not in the design, but in the vehicles' failures to meet the correct specifications due to faulty materials or workmanship. Of course, without the benefit of discovery, Plaintiffs cannot know for sure whether the Water Intrusion Defect is a defect in design or manufacturing, which is why the FAC alleges both in the alternative. FAC ¶¶ 1, 10, 60, 251, 265.

FCA argues that the Water Intrusion Defect must be a design defect because Plaintiffs have alleged that the defect applies to a class of vehicles. *See* ECF No. 16, PageID.1156-1157. But FCA does not clearly explain the logic behind this assertion, which has been repeatedly rejected by this Court and others in this District. *Milisits v. FCA US LLC*, 2021 WL 3145704, at *4 (E.D. Mich. July 26, 2021) (citing *Persad v. Ford Motor Co.*, 2018 WL 3428690, at *5 (E.D. Mich. July 16, 2018)) ("courts have rejected efforts to create an artificial distinction between design and materials/workmanship defects" at the motion to dismiss stage); *see also Gregorio v. Ford Motor Co.*, 2021 WL 778913, at *15 (E.D. Mich. Mar. 1, 2021). It is entirely

---

[1] *See* Restatement (Third) Torts: Product Liability § 2, comment d. ("[A] product asserted to have a design defect meets the manufacturer's design specifications but raises the question whether the specifications themselves create unreasonable risks").

plausible that a class of vehicles could be affected by a uniform flaw in materials or the manufacturing process.[2]

Moreover, because Plaintiffs have expressly alleged a defect in materials and workmanship, holding that the Water Intrusion Defect is a design defect as a matter of law "would be to invert the motion to dismiss standard." *See Napoli-Bosse v. Gen. Motors LLC*, 453 F. Supp. 3d 536, 548 (D. Conn. 2020) (rejecting argument that a defect alleged to apply to a class of vehicles is necessarily a design defect). FCA is effectively asking this Court to draw an inference *against* Plaintiffs' allegations when Rule 12(b)(6) requires the opposite. Having alleged a defect that plausibly stems from an issue in the manufacturing process, Plaintiffs should be allowed to proceed with their express warranty claims past the pleading stage. *See McCarthy v. Toyota Motor Corp.*, 2018 WL 6318841, at *8 (C.D. Cal. Sept. 14, 2018); *Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *12 (D.N.J. May 8, 2017).

### 2.   FCA Breached Its Limited Warranty.

FCA also contends that the Limited Warranty was not breached because some Plaintiffs were not charged for repairs and others did not present their vehicles for

---

[2] FCA's reliance on *Tull Bros., Inc. v. Peerless Prods., Inc.*, 953 F. Supp. 2d 1245 (S.D. Ala. 2013) and *Severstal N. Am., Inc. v. N. Am. Refractories Co.*, 2009 WL 1620115 (E.D. Mich. June 9, 2009) is misplaced, as the courts in both of those cases were ruling on motions for summary judgment and considering a thorough evidentiary record.

repairs during the warranty period. *See* ECF No. 16, PageID.1155. However, Plaintiffs presented their vehicles to dealers for repair of the Water Intrusion Defect, but the dealerships only performed band-aid repairs that did not resolve the Defect in accordance with the promise of the Limited Warranty. FAC ¶¶ 22, 30, 36, 42–43. Thus, FCA breached its express warranty because no Plaintiff received an actual, effective repair that the Limited Warranty promised to them.

FCA's failure to repair Plaintiffs' vehicles also demonstrates the futility in the other Plaintiffs presenting their vehicles for repair. Courts have held that a plaintiff may plausibly state a futility exception by alleging (via, for example, a manufacturer's ineffective safety recall) that the manufacturer "knew of the nature of the . . . defect and refused to provide a suitable repair or replacement . . ." *McCarthy*, 2018 WL 6318841, at *10.[3] This is exactly what Plaintiffs have alleged here. FAC ¶¶ 10–11, 52–60. The FAC therefore plausibly allows for the inference that it would have been futile for Plaintiffs to present their vehicles for repairs, as

---

[3] *See also Chevy Bolt*, 2022 WL 4686974, at *33 (finding futility where plaintiffs alleged a common defect to all vehicles, that defendant was consistently unable to fix the defect, and that any repairs offered were insufficient); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1189 (C.D. Cal. 2010) ("At the pleadings stage the Court cannot say whether attempts to comply with the informal dispute settlement procedure put in place by Toyota are futile. Plaintiffs' allegations allow for such an inference."); *Afzal v. BMW of N. Am., LLC*, 2016 WL 6126913, at *6 (D.N.J. Oct. 17, 2016) ("[W]hether Plaintiff[s] fulfilled [their] responsibilities under the warranty is a quintessential fact question. Dismissal at this stage would be premature.").

FCA continues to deny the existence of the Water Intrusion Defect and continues to refuse, or is unable, to provide repairs that would resolve the Defect. Because all plausible inferences from the allegations in the FAC must be drawn in favor of Plaintiffs, this Court should reject FCA's argument that Plaintiffs have not stated claims for breach of express warranty.

FCA also argues that Plaintiffs have failed to state claims for breach of express warranty based on the timing of the manifestation of the Water Intrusion Defect. ECF No. 16, PageID.1155. However, FCA ignores Plaintiffs' allegations that the warranty fails in its essential purpose. FAC ¶¶ 10, 144, 204, 325, 384. When a limited warranty remedy fails in its essential purpose, the limited remedy is stricken, and the buyer may recover full UCC damages. *Rollolazo v. BMW of N. Am., LLC*, 2017 WL 6888501, at *10 (collecting statutes from several states, including California and Texas). To plead that a warranty fails in its essential purpose, a plaintiff only needs to plead facts that plausibly suggest that the defendant's "limited remedies were inadequate . . ." *Barnext Offshore Ltd. v. Ferretti Grp. USA, Inc.*, 2011 WL 13223746, at *10 (S.D. Fla. May 16, 2011).[4] Indeed, other courts in this Circuit have recognized the principle that a warranty fails of its essential purpose when the limited remedy on offer "deprives the purchaser of the substantial value of

---

[4] *See Chevrolet Bolt*, 2022 WL 4686974, at *33 ("Generally, a repair-or-replace warranty fails its essential purpose when the seller is either unwilling or unable to repair the vehicle.") (citation omitted) (internal quotation omitted).

its bargain," which may occur when "the goods purchased under the contract contain latent defects . . ." *Lincoln Elec. Co. v. Technitrol, Inc.*, 2010 WL 2219341, at *4 (N.D. Ohio June 2, 2010). Whether a limited warranty remedy fails of its essential purpose is a fact issue that cannot be resolved at the pleading stage. *Id.* (collecting cases); *Bello v. Caterpillar, Inc.*, 2018 WL 2214709, at *6 (S.D. Fla. Apr. 10, 2018).

Here, FCA concealed the existence of a latent defect which Plaintiffs could not have discovered after a reasonable inspection. Plaintiffs could not have known that they should have presented their vehicles for repairs until the Water Intrusion Defect manifested. Moreover, when Plaintiffs did present their vehicles for repairs, FCA offered repairs that did not actually resolve the problem. *See* FAC ¶¶ 22, 30, 36, 42–43. Each Plaintiff experienced a recurrence of the Water Intrusion Defect after these "repairs." *Id.* FCA's conduct rendered the remedy promised by the Limited Warranty useless. Plaintiffs have therefore sufficiently alleged that the Limited Warranty failed in its essential purpose.

### 3. FCA Cannot Rely on the Limited Warranty's Limitation of the Implied Warranty of Merchantability Because of Its Own Fraudulent Concealment and Because the Limited Warranty Fails in Its Essential Purpose.

FCA also argues that the durational limit of the Limited Warranty forecloses all Plaintiffs' breach of implied warranty claims. *See* ECF No. 16, PageID.1158. FCA misunderstands its own durational limitation. The date of the breach is not the date at which the Water Intrusion Defect first manifested, as FCA contends, but the

10

date of delivery. *See, e.g.*, *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1278 (E.D. Mich. 2021) (rejecting the same argument from GM and holding that when plaintiffs allege a uniform defect present at the time of sale, "the question of whether a defect manifested within the warranty period does not arise"); *Yeager v. Ford Motor Co.*, 2020 WL 95645, at *2 (N.D. Cal. Jan. 8, 2020) (stating that, under the UCC, "the implied warranty could be breached only at the time of delivery."). Plaintiffs allege that FCA breached the implied warranty at the point of sale, because the Water Intrusion Defect is present in the Class Vehicles from the moment they are first produced. FAC ¶¶ 217, 336.

To that end, Plaintiffs allege that FCA's fraudulent concealment prevented Plaintiffs from discovering the existence of the Water Intrusion Defect (FAC ¶¶ 149-151), tolling any applicable statute of limitations.[5]

Moreover, as previously discussed, a warranty limitation is unenforceable if it fails its essential purpose. *Agricola Cuyuma SA v. Corona Seeds, Inc.*, 2018 WL 6185969, at *13 (C.D. Cal. Aug. 27, 2018). A warranty fails its essential purpose where a defendant is unable to repair the defect within a reasonable time. *Lessin v. Ford Motor Co.*, 2021 WL 3810584, at *2 (S.D. Cal. Aug. 25, 2021). Here, Plaintiffs

---

[5] *Rutledge v. Freeman*, 914 So.2d 364, 367–71 (Ala. Civ. App. 2004); *Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1189–90 (C.D. Cal. 2017); *Barrett v. United Ins. Co. of Am., Inc.*, 418 F. Supp. 3d 1274, 1287–91 (S.D. Ga. 2019); *Harris v. BMW of N. Am., LLC*, 2020 WL 7074878, at *3–5 (E.D. Tex. Dec. 3, 2020).

have alleged that FCA's warranty fails in its essential purpose "because it has failed to offer an effective and permanent repair for the Water Intrusion Defect." FAC ¶ 144. Ultimately, this issue is a question of fact.[6]

### 4.    Plaintiffs' Vehicles Are Not Merchantable.

FCA claims Plaintiffs' vehicles are merchantable as a matter of law because they did not immediately manifest the Water Intrusion Defect. ECF No. 16, PageID.1157-1158. At minimum, this is a mischaracterization of multiple states' laws, which hold that merchantability is a question of fact that cannot be decided before trial. *Click v. Gen. Motors LLC*, 2020 WL 3118577, at *11 ("[W]hether a defect is so severe that the cars at issue could not be said to provide safe, reliable transportation is a question of fact for the jury.") (applying Texas law).[7]

Moreover, despite FCA's insistence to the contrary, the Water Intrusion Defect specifically renders Plaintiffs' vehicles unmerchantable. In another case also alleging a water leak defect, the court, applying California law, held that an alleged "water leak defect [which] pose[d] the danger of catastrophic engine and/or

---

[6] *Agricola*, 2018 WL 6185969, at *12; *Lincoln Elec. Co.*, 2010 WL 2219341, at *4; *Siemens Credit Corp. v. Marvik Colour, Inc.*, 859 F. Supp. 686, 695 (S.D.N.Y. 1994) ("Whether a limited remedy in a contract that is intended to replace a different remedy under the U.C.C. fails in its essential purpose is a question of fact, not law."); *see also* 5 Anderson U.C.C. § 2A-503:126 (3d. ed.).

[7] *See Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 879–80 (N.D. Cal. 2018) (applying California law); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1287–88 (N.D. Ga. 2018) (applying Georgia law); *McDonald v. Mazda Motors of Am., Inc.*, 603 S.E.2d 456, 461–62 (Ga. Ct. App. 2004) (same).

electrical system failure as a result of water entering and flooding a vehicle's interior cabin" stated a claim for breach of implied warranty of merchantability. *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1244 (C.D. Cal. 2011) (internal quotation marks omitted). Here, the FAC similarly alleges that the Water Intrusion Defect can cause electrical system failure, which can in turn cause several problems that may render the vehicle inoperable or unsafe to operate. FAC ¶¶ 80–81. Taking these allegations as true, Plaintiffs have plausibly alleged a defect that, if proven, has prevented their vehicles from "provid[ing] safe, reliable transportation" and thus renders their vehicles unmerchantable.[8]

### 5. Plaintiffs Norman and Jones Were Intended Third-Party Beneficiaries of FCA's Contracts with Dealers, and Plaintiff Jones Had Privity with FCA.

Although Alabama generally requires privity of contract to sustain a breach of implied warranty claim, Alabama law also recognizes a third-party beneficiary exception to this requirement. *See Freeman v. NIBCO, Inc.*, 526 F. Supp. 3d 1112, 1132 (N.D. Ala. 2020); *Naef v. Masonite Corp.*, 923 F. Supp. 1504, 1508 (S.D. Ala. 1996). This exception has three elements: "1) that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended beneficiary of the contract; and 3) that the

---

[8] FCA cites to *Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017), but this Court has already stated that it "is not persuaded by *Beck's* reasoning" on this point." *Chevy Bolt*, 2022 WL 4686974, at *35.

contract was breached." *Sheetz, Aiken & Aiken, Inc. v. Spann, Hall, Ritchie, Inc.*, 512 So.2d 99, 101–02 (Ala. 1987) (collecting cases). Alabama courts have not addressed the third-party beneficiary exception in cases like this one, but federal district courts have applied other states' third-party beneficiary exceptions to privity in the vehicle defect context.[9]

Meanwhile, under Georgia law, privity between a manufacturer and an end user consumer is established whenever a manufacturer directs any express warranty toward the consumer—even if the subject goods were purchased from a retailer and not directly from the manufacturer. *Lee v. Mylan, Inc.*, 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011) (collecting cases).[10] This rule extends to implied warranty claims as well. *Id.* ("Once privity is established, a plaintiff may bring claims for breach of the implied warranties of merchantability and fitness for a particular purpose.") Georgia law also codifies the third-party beneficiary exception, although the *Lee* court did not need to reach that question. *Id.* at 1328 (citing Ga. Code § 11-2-318). Here, Plaintiff Jones purchased his vehicle while it was still under the Limited

---

[9] *See, e.g.*, *Weiss v. Gen. Motors, LLC*, 418 F. Supp. 3d 1173, 1183 (S.D. Fla. 2019) (applying Florida law); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1234 (S.D. Fla. 2014) (same); *Keegan v. Am. Honda Motor Co. Inc.*, 838 F. Supp. 2d 929, 947–48 (C.D. Cal. 2012) (noting that, under California law, a purchaser of a vehicle may maintain an implied warranty claim against a manufacturer when the vehicle is purchased from an authorized dealer).

[10] One of the cases cited by the *Lee* court expressly recognized that such a warranty from manufacturer to end user consumer is common in the sale of motor vehicles. *Evershine Prods., Inc. v. Schmitt*, 202 S.E.2d 228, 231 (Ga. App. Ct. 1973).

Warranty mileage, meaning he had privity with FCA under applicable Georgia law. Additionally, as end user consumers, Plaintiffs Norman and Jones were both intended third-party beneficiaries of FCA's sales of vehicles to dealers.

## B.    Plaintiffs Adequately Plead Their Fraud-Based Claims

### 1.    Plaintiffs' Omission-Based Fraud Claims Satisfy Rule 9(b)

Plaintiffs' claims are based only on FCA's omissions and concealment, not affirmative misrepresentations. Thus, FCA's arguments regarding claims based on affirmative misrepresentations are not applicable here.

To maintain an omission-based claim under Rule 9(b), a plaintiff must plead the "the who, what, when, where, and how" of the alleged omission." *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc*., 683 F.3d 239, 256 (6th Cir. 2012). "'[B]ecause a plaintiff alleging an omission-based fraud will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim[,]' a plaintiff bringing a fraudulent concealment claim 'faces a slightly more relaxed pleading burden . . . [and] can succeed without the same level of specificity required by a normal fraud claim.'" *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 789 (E.D. Mich. 2019) (quoting *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751 (E.D. Mich. 2017)). "The reasons for the disparate burden are straightforward. Fraudulent acts occur at a specific time, fraudulent omissions occur over a period of time. Fraudulent acts can be specifically described, but

omissions are, by very definition, more amorphous." *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1055 (E.D. Mich. 2018). That is why "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F. 3d 788, 803 (6th Cir. 2012).

As stated by a court in this District in an automobile defect case against FCA: "[Plaintiff] has adequately pleaded the 'who' (FCA), the 'what' (knowing about, yet failing to disclose, the alleged rotary shifter system defect), the 'when' (from the time the vehicles were first placed on the market in 2012 to the present day), the 'where' (the various channels through which FCA sold the class vehicles, including the dealership in Carlsbad, California, where [plaintiff] purchased his vehicle), and the 'how' (if [plaintiff] and the class members had known of the alleged defect, they would have not purchased or leased the class vehicles, or they would have paid less for them)." *Beck*, 273 F. Supp. 3d at 751-52. Here, Plaintiffs have satisfied this standard. Plaintiffs allege the "who" (FCA), FAC ¶¶ 1-15; the "what" (FCA's failure to disclose the Defect despite knowing about it prior to the sale, *i.e.*, as early as 2016 or before), *id.* ¶¶ 8, 95-137, 224-228, 275-279, 344-348, 400-404; the "when" (prior to the sale of the Class Vehicles), *id.* ¶¶ 95-137; "where" (the various channels of information through which FCA sold the class vehicles), *id.* ¶¶ 23, 128-136; and "how" (if Plaintiffs had known of the Defect, they would not have purchased the

Class Vehicles or would have paid less for them), *id.* ¶¶ 23, 32, 38, 45, 184, 229, 280, 309, 312, 349, 368, 405. Accordingly, Plaintiffs adequately alleged their omission-based fraud claims to satisfy Rule 9(b).

### 2. Plaintiffs Adequately Allege FCA's Pre-Sale Knowledge.

FCA knew or should have known of the Defect since at least 2016. To support their allegations, Plaintiffs cite: (1) NHTSA complaints dating back to 2016 detailing the Water Intrusion Defect, which FCA monitors, FAC ¶¶ 61-72, 101-121; (2) aggregate data from authorized-FCA dealerships, *id.* ¶ 122 (FCA tracks vehicle diagnosis and repairs from dealership technicians in an aggregated database)); (3) internal pre-sale testing, *id.* ¶¶ 95-100 (detailing FCA's pre-production and durability testing on the seals and structures and new vehicle components, including, but not limited to, Failure Modes and Effects Analyses ("FEMA") and frame/chassis twisting, which should have revealed the Water Intrusion Defect); (4) complaints and discussions of the Water Intrusion Defect in online forums, which are monitored by FCA, *id.* ¶ 123; and (5) the issuance of three Technical Service Bulletins ("TSBs") illustrating the Water Intrusion Defect, *id.* ¶¶ 52-59. These allegations, especially when "[c]onstrued liberally," are enough to withstand FCA's motion. *See Weidman v. Ford Motor Co*., 2019 WL 3003693, at *6 (E.D. Mich. July 10, 2019) (finding allegations of similar types of knowledge demonstrated defendant's pre-sale knowledge of the defect); *In re Gen. Motors Air Conditioning Mktg. & Sales*

*Practices Litig.* ("*GM Air Conditioning*"), 406 F. Supp. 3d 618, 637 (E.D. Mich. 2019) (allegations that GM knew of the defect sufficed "[w]hen taken together").[11]

### 3. FCA's Additional State-Specific Arguments Lack Merit.

#### a. *State law class action bars do not prohibit Plaintiffs' Alabama and Georgia consumer protection claims.*

Federal courts agree that class action bars, such as those found in the Georgia Fair Business Practices Act, Ga. Code §§ 10-1-390 *et seq.*, ("GFBPA") and the Alabama Deceptive Trade Practices Act, Ala. Code §§ 8-9-1 *et seq.*, ("ADTPA"), are procedural, not substantive, such that Federal Rule of Civil Procedure 23 takes precedence under *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).[12] Thus, this Court should decline to dismiss Plaintiffs' GFBPA and

---

[11] FCA's reliance on *Smith v. Gen. Motors LLC*, 988 F.3d 873 (6th Cir. 2021) to contend that pre-production testing cannot plausibly establish FCA's pre-sale knowledge is unavailing. ECF No. 16, PageID.1163. In *Smith*, the Court noted that "[m]any class members allege that their dashboards did not crack until after driving their car tens (or hundreds) of thousands of miles over many years." *Smith*, 988 F.3d at 886. Accordingly, the Court concluded that "Plaintiffs cannot rely on pre-production test and post-hoc complaints to show knowledge of a defect that only arose after extended use." *Id.* Here, unlike in *Smith*, the Water Intrusion Defect often caused leaks very early in the life of the vehicle, sometimes at less than 1,000 miles. *See* FAC ¶ 103 (200 miles); ¶ 114 (424 miles); ¶ 102 (751 miles); ¶¶ 70-71 (two instances at 3,000 miles); ¶ 65 (5,500 miles when the vehicle was less than a year old); ¶ 42 (after only seven months and less than 10,000 miles).

[12] *See Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 689 (E.D. Mich. 2020) (citing cases and finding Georgia's prohibition is procedural and does not bar class action procedures in federal court); *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 657 (E.D. Mich. 2021) (declining to dismiss plaintiffs' GFBPA claim and concluding that Georgia's prohibition is procedural and does not bar class action procedures in federal court); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d

18

ADTPA claims on the basis of state law class action prohibitions.

>           **b.     The ADTPA's "savings clause" does not prohibit Plaintiffs'
>                    claim.**

Contrary to FCA's contention, courts have found that the ADTPA's "savings clause" does not preclude a plaintiff from pleading both a common law claim and a claim under the ADTPA. *See GM Air Conditioning*, 406 F. Supp. 3d at 643 (declining to dismiss plaintiffs' ADTPA claim, concluding that "[t]he 'savings clause' of the ADTPA does not bar [plaintiffs] ADTPA claim as a matter of law" because "the 'savings clause' refers to exclusive *remedies*, not causes of action or theories of liability").[13] Accordingly, the "savings clause" does not preclude

---

1277, 1292 (N.D. Ga. 2018) ("Federal Rule 23 trumps the representative prohibition of the GFBPA for claims brought in federal court") *Lisk v. Lumber One Wood Preserving, LLC*, 792 F.3d 1331, 1335-36 (11th Cir. 2015) (declining to dismiss plaintiffs' ADTPA claim, concluding that "[t]he Alabama statute restricting class actions, . . . does not apply in federal court. Rule 23 controls"); *Jones v. Coty Inc*., 362 F. Supp. 3d 1182, 1199-1200 (S.D. Ala. 2018) (concluding that the ADTPA's prohibition is procedural and does not bar class actions in federal court); *Phillips v. Hobby Lobby Stores, Inc*., 2019 WL 8229168, at *5 (N.D. Ala. Sept. 30, 2019) ("Rule 23 applies to the [ADTPA] claim before this court and trumps [ADTPA's] ban of class actions in federal court.").

[13] *See also Morris v. Walmart Inc*., 2020 WL 470287, at *6 (N.D. Ala. Jan. 29, 2020) (concluding that, at the pleading stage, a plaintiff may plead both ADTPA and common law claims because "although the plain language of the savings clause requires a plaintiff to elect one or the other remedy, it does not specify *when* in the proceedings the plaintiff must do so"); *Barcal v. MD Serono, Inc*., 2016 WL 1086028, at *5 (N.D. Ala. Mar. 21, 2016) ("Although the [ADTPA's] savings clause would preclude [plaintiff] from ultimately obtaining relief under both the [ADTPA] and her common law claims, Federal Rule of Civil Procedure 8 allows parties to plead alternative, even inconsistent, theories.") (citing Fed. R. Civ. P. 8(d)(3)).

Plaintiffs' ADTPA claim.

### c. *Plaintiffs' CLRA claim should be allowed to proceed.*

This Court should decline to dismiss Plaintiffs' California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, ("CLRA") claim for failure to provide FCA with thirty days' notice before first filing the CLRA claim. The purpose of the CLRA's thirty-day notice requirement is "to allow a defendant to avoid liability for damages if the defendant corrects the alleged wrongs within 30 days after notice, or indicates within that 30–day period that it will correct those wrongs within a reasonable time." *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1106 (S.D. Cal. 2015). In *Baird v. Samsung Elecs. Am., Inc*., 2018 WL 4191542, at *9 (N.D. Cal. 2018), *reversed and remanded on other grounds*, 804 F. App'x 481 (9th Cir. 2020), the California district court declined to dismiss plaintiffs' CLRA claim for failure to provide defendant with thirty-days' notice. While the court noted that, under California law, in order to meet the thirty-day notice requirement, "courts must dismiss a claim until thirty days or more after a plaintiff has complied with the notice requirements," the court concluded that "in cases when a defendant has already had more than thirty days' notice after the filing of an otherwise untimely CLRA claim, there is nothing to gain by dismissing the claim with leave to amend, and the claim should be allowed to proceed if otherwise proper." *Id*. The same result is warranted here. After the initial complaint was filed in this action, on August 26, 2022, this

20

Court entered a stipulated order, requiring Plaintiffs to file an amended complaint no later than September 29, 2022. Plaintiffs acted diligently, notifying FCA on September 14, 2022, of their intention to bring a CLRA claim in the amended complaint. FCA has now had more than thirty days' notice since the filing of the CLRA claim, but FCA has not indicated that it will correct the Defect within a reasonable time, and there is nothing to gain by dismissing the CLRA claim. Accordingly, Plaintiffs' CLRA claim should be allowed to proceed.

### d.   *Plaintiffs adequately allege their UCL claim.*

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "An act can be alleged to violate any or all of the three prongs of the UCL—unlawful, unfair, or fraudulent." *Doyle v. Chrysler Grp. LLC*, 2014 WL 1910628, at *5 (C.D. Cal. Jan. 29, 2014). "By proscribing any unlawful business practice, [the UCL] borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Reynolds*, 546 F. Supp. 3d at 659 (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539-40 (1999) (internal citation and quotations omitted). A violation of state warranty laws, the MMWA, or the CLRA establish "unlawful" conduct in violation of the UCL. *Reynolds*, 546 F. Supp. 3d at 659 (concluding that plaintiff may proceed with her UCL claim because she "plausibly alleges violations of state warranty laws,

the MMWA, and the [CLRA]"). *See also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1175 (C.D. Cal. 2010). Here, Plaintiffs plausibly allege violations of the MMWA, California state warranty laws, and the CLRA. Thus, FCA's motion to dismiss Plaintiffs' UCL claim should be denied.

### e.  *The economic loss doctrine does not prohibit Plaintiffs' California and Texas fraud claims*

FCA's contention that the economic loss doctrine bars Plaintiffs' California and Texas fraud claims lacks merit. Both the California and Texas district courts recognize exceptions to the economic loss doctrine where plaintiffs allege fraud by omission. *Experian Info. Solutions, Inc., v. Lexington Allen, L.P.*, 2011 WL 1627115, at *12 (E.D. Tex. Apr. 7, 2011) ("The economic loss rule does not apply to fraud claims, including claims for fraud in the performance and fraudulent omission.").[14] Here, Plaintiffs allege that FCA failed to disclose, and actively

---

[14] *See also, e.g.*, *Avitia v. Rodriguez*, 2022 WL 4004796, at *6 (W.D. Tex. Jul 8, 2022); *In re Takata Airbag Prods. Liab. Litig.*, 2020 WL 3286821, at *10 (S.D. Fla. May 29, 2020) (concluding that the economic loss rule did not bar the Texas fraud-based claims where plaintiffs alleged that GM "failed to disclose and actively concealed the dangers and risks posed" by the defect "with the intent to induce consumers to purchase or lease them," and if plaintiffs had been aware of the defect, they "would not have purchased their vehicles or paid as much for them," (citing *Bates Energy Oil & Gas v. Complete Oilfield Servs.*, 361 F. Supp. 3d 633, 655 (W.D. Tex. Jan. 14, 2019)); *Scherer v. FCA US, LLC*, 565 F. Supp. 3d 1184, 1191-93 (S.D. Cal. 2021) (concluding that "the economic loss doctrine does not bar the fraud by omission claim" where plaintiffs alleged that "the crux of the [complaint's] fraud allegation is that Defendant fraudulently induced Plaintiffs into the warranty by

22

concealed, the Water Intrusion Defect, in an effort to induce Plaintiffs to purchase the Class Vehicles, and if Plaintiffs had known of the Defect, they would not have purchased or would have paid less for the Class Vehicles. FAC ¶¶ 8, 206, 224-230, 275-282, 344-351, 400-407. Thus, Plaintiffs' California and Texas fraud claims should not be prohibited by the economic-loss doctrine.

## C.     Plaintiffs Adequately Plead Unjust Enrichment.

Plaintiffs' unjust enrichment claims should proceed, as many courts have similarly held in auto defect cases similar to this one. *See, e.g.*, *In re FCA US LLC Monostable Elec. Gearshift Litig.* ("*FCA Monostable II*"), 446 F. Supp. 3d 218, 228-29 (E.D. Mich. 2020); *Francis*, 504 F. Supp. 3d at 694; *Crawford v. FCA US LLC*, 2021 WL 3603342, at *11-12 (E.D. Mich. Aug. 13, 2021). The arguments FCA raises here are the same as those raised, and rejected by this Court, in *Chapman* and *Raymo*. *Chapman*, 531 F. Supp. 3d at 1304; *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 709-11 (E.D. Mich. 2020). Plaintiffs urge the Court to follow those decisions again here.

Specifically, FCA argues that Plaintiffs cannot maintain their unjust enrichment claims where there is an express warranty. ECF No. 16, PageID.1166-

---

concealing the transmission and PCM issues"); *In re Ford Motor Co. DPS6 Powershift Transmission Prods. Liab. Litig.*, 2019 WL 3000646, at *6 (C.D. Cal. May 22, 2019) (declining "to apply the economic loss rule to the [fraudulent] omission claims at [the pleading] stage").

1167. But that is not true, as Fed. R. Civ. P. 8(a)(3) specifically allows a party to plead in the alternative. *See Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 797 (6th Cir. 2016); *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017); *FCA Monostable II*, 446 F. Supp. 3d at 229. Since FCA explicitly contends that the Water Intrusion Defect is a design defect not covered by the express warranty, there is a live dispute as to whether the express warranty covers the Water Intrusion Defect, and Plaintiffs' unjust enrichment claims should proceed.

FCA also incorrectly contends that Plaintiffs cannot maintain claims for unjust enrichment because they failed to plead facts showing their legal remedies are inadequate. ECF No. 16, PageID.1167. But, again, Plaintiffs are entitled to plead in the alternative in the event they are unable to obtain an adequate legal remedy. *Francis*, 504 F. Supp. 3d at 694.

Finally, FCA also incorrectly contends that Plaintiffs' Georgia unjust enrichment claim must be dismissed for failure to confer a direct benefit on FCA because Plaintiff Jones purchased his vehicle from a third party. ECF No. 16, PageID.1167. *See In re FCA US LLC Monostable Electronic Gearshift Litig.* ("*FCA Monostable I*"), 280 F. Supp. 3d 975, 1008-09 (E.D. Mich. 2017) (concluding that "the courts dismiss such claims only where the plaintiffs fail to allege facts showing that they have bestowed some sort of benefit upon the defendant that the defendant ought not keep in equity and good conscience") (citation and quotation omitted).

Here, Plaintiffs alleged that they conferred a benefit on FCA by overpaying for their vehicles at the time of purchase or lease and FCA benefitted from the increased financial gain to the detriment of Plaintiffs. FAC ¶¶ 354-359.

**D.    The Nationwide Claims Should Not Be Dismissed.**

FCA ignores this Court's (and other courts') rulings on this issue in previous opinions. *Chevy Bolt*, 2022 WL 4686974, at \*7-9; *Est. of Pilgrim v. Gen. Motors LLC*, 2022 WL 989322, at \*4 (E.D. Mich. Mar. 31, 2022); *Chapman*, 531 F. Supp. 3d at 1274; *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488, 495 (E.D. Mich. 2021); *FCA Monostable I*, 280 F. Supp. 3d at 1017. Accordingly, this Court should decline to dismiss Plaintiffs' nationwide class MMWA claim.

<u>**CONCLUSION**</u>

For these reasons, Plaintiffs request that the Court deny FCA's Motion.

Dated: November 18, 2022                Respectfully submitted,

<u>*/s/ E. Powell Miller*</u>
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
Dana E. Fraser (P82873)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, Michigan 48307
Telephone: 248-841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com
def@millerlawpc.com

W. Daniel "Dee" Miles, III
H. Clay Barnett, III
J. Mitch Williams
Dylan T. Martin
**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
272 Commerce Street
Montgomery, Alabama  36104
Telephone: 334-269-2343
Dee.Miles@Beasleyallen.com
Clay.Barnett@beasleyallen.com
Mitch.Williams@Beasleyallen.com
Dylan.Martin@BeasleyAllen.com

Adam J. Levitt
John E. Tangren
Daniel R. Ferri
**DICELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
jtangren@dicellolevitt.com
dferri@dicellolevitt.com

*Counsel for Plaintiffs and the Proposed
Classes*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 18, 2022, I electronically submitted the foregoing to the Court via the ECF, which automatically served all counsel of record.


<u>*/s/ E. Powell Miller*</u>
E. Powell Miller